66 A.3d 1271

NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES, DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF-RESPONDENT, v. I.S., DEFENDANT-APPELLANT.

IN THE MATTER OF THE GUARDIANSHIP OF S.S., A MINOR.

Argued January 14, 2013—Decided June 12, 2013.

*T. Gary Mitchell,* Deputy Public Defender, argued the cause for appellant (*Joseph E. Krakora,* Public Defender, attorney).

*Ann Avram Huber,* Assistant Attorney General, argued the cause for respondent (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

*Jeffrey R. Jablonski,* Designated Counsel, argued the cause for respondent S.S. (*Joseph E. Krakora,* Public Defender Law Guardian, attorney).

*Sean Marotta* argued the cause for amicus curiae Statewide Parent Advocacy Network, Inc. (*Hogan Lovells US,* attorneys).

*Mary M. McManus–Smith* argued the cause for amicus curiae Legal Services of New Jersey (*Melville D. Miller, Jr.,* President, attorney, *Ms. McManus–Smith, Mr. Miller,* and *Jeyanthi C. Rajaraman,* on the brief).

*Ronald K. Chen* argued the cause for amicus curiae American Civil Liberties Union of New Jersey (*Rutgers Constitutional Litigation Clinic Center for Law & Justice,* attorneys; *Mr. Chen, Edward L. Barocas, Jeanne M. LoCicero,* and *Alexander R. Shalom,* of counsel and on the brief).

Justice LaVECCHIA delivered the opinion of the Court.

In this appeal, we address the actions that courts may authorize under Title 9 and Title 30, and the services that the Division of Youth and Family Services [1] (the Division) may offer to families in

---

[1] On June 29, 2012, the New Jersey Division of Youth and Family Services was renamed the Division of Child Protection and Permanency. *See L.* 2012, *c.* 16, § 20 (amending *N.J.S.A.* 9:3A–10(b)).

need under *N.J.S.A.* 30:4C–12. Specifically, we address how the Legislature intended to authorize the Division to secure services for children in need when services are clearly needed, and a parent is unable to provide for the children's health and safety but does not consent to turning over care, custody, or supervision to the Division. Further complicating this matter, the Family Part was unable to make a finding on this record that the children were abused or neglected as defined under Title 9. Family courts are expected to address many difficult situations, such as the one this case presented. We use this matter to address the proper application of the integrated and comprehensive means provided by the Legislature to the Division and the courts when confronting such challenging circumstances.

The Legislature has provided a variety of avenues in Title 9 and Title 30 by which the Division may intervene in a family to assist children and families in need. Title 9 allows the Division to become involved against the wishes of a parent when a child is abused or neglected. *N.J.S.A.* 9:6–8.21. The State's child-protection policy interest lies in authorizing immediate care, custody, and supervision of the child harmed or at risk of imminent harm. In this matter, we clarify that when there is no finding of abuse or neglect, *N.J.S.A.* 9:6–8.50(c) does not permit the continued, indefinite exercise of jurisdiction by the family court. The Title 9 action must be dismissed. However, when the Division brings its complaint also under the authority granted to it under Title 30, the court's jurisdiction may continue.

Legislative authorization to the Division under Title 30 enables the provision of services to children in need. There are two means provided: *N.J.S.A.* 30:4C–11 and –12. *N.J.S.A.* 30:4C–11 (Section 11) applies when the parent or parents voluntarily consent to the Division's assistance. *See N.J. Dep't of Children & Families v. A.L.,* 213 *N.J.* 1, 31–32, 59 *A.*3d 576 (2013). *N.J.S.A.* 30:4C–12 (Section 12) applies when there is no voluntary parental consent to Division care and supervision.

This matter involves an action that the Division brought, in the alternative to Title 9, under authority conferred by *N.J.S.A.* 30:4C–12. In this opinion, we elaborate on what the Division must demonstrate to proceed with an action under Section 12 and the standard of proof required in these cases, which results in a diminution of parental autonomy. Without doubt, the Legislature intended *N.J.S.A.* 30:4C–12 to authorize the Division to intervene when children need services and a parent cannot provide that help for no fault-based reason. Section 12 authorizes the court to award care, supervision, and even custody to the Division for the provision of needed services, subject to the court's periodic review. At bottom, the statute permits the Division—rather than parents—to determine what services the child or children will receive. However, Section 12 cannot be viewed fairly as providing free rein to the Division to inquire into the personal lives of families. This opinion highlights the legislative design that balances those interests through Section 12's requirements.

In our review of the proceedings that took place here, we find no error in the court's substantive determinations regarding the provision of services to the twin girls who were the subject of the Division's action. Nor do we find that the court's practical response to the custody circumstances presented at the conclusion of the residential services to each girl resulted in any deprivation of process to respondent, I.S. For the reasons expressed, although we reverse the Title 9 portion of the judgment that continued the court's jurisdiction under that statutory scheme, we nonetheless affirm the judgment under the court's Title 30 jurisdiction, as modified for the reasons expressed herein.

I.

A.

The complaint filed by the Division in this matter sought to obtain care and custody of nine-year-old twin girls under Title 9 and *N.J.S.A.* 30:4C–12. I.S. and E.S. are the biological mother

and father of N.S. and S.S., who were born on October 3, 1997. I.S. and E.S. later divorced and have litigated custody, visitation, and child support in the Camden vicinage Family Part almost continuously until the twins were removed from I.S.'s custody through the intercession of the Division in 2007.

The Division first became involved with the family on January 22, 2003, when it received a referral indicating that the twins claimed they were sexually assaulted by their paternal grandmother during a weekend visit with E.S. After investigation, the Division declared the allegations unsubstantiated. Between 2003 and 2007, the Division received fourteen additional referrals concerning the children and their family members; all were deemed unfounded.

On September 7, 2007, the children's in-home therapist reported to the Division that I.S. claimed N.S. was wielding a knife in the home. The therapist was concerned that the twins were a danger to themselves and to others in the home. The Division investigated and learned from I.S. that the twins hit, bit, and kicked her, each other, and their grandparents, who lived with the family and cared for the girls in I.S.'s absence. I.S. informed the Division that the twins suffered from pervasive developmental disorder, obsessive compulsive disorder, anxiety, and possibly a bipolar disorder. Notwithstanding her love for her daughters, I.S. believed that the girls would benefit from a residential placement where they could receive medical supervision and intensive counseling.

While conducting its investigation, the Division received three more referrals concerning the family. On September 12, 2007, the Division learned that the twins were wandering the neighborhood unsupervised. On September 16, 2007, hospital staff in the Virtua Health System contacted the Division after I.S. brought the girls to the hospital's emergency room on the recommendation of a representative of the State Division of Developmental Disabilities. I.S. told hospital personnel that she was overwhelmed, could not manage the twins' care, and wanted to have the girls placed in a

residential facility. Three days later, on September 19, 2007, a school employee contacted the Division after learning from N.S. that S.S. was absent from school because S.S. had pulled I.S.'s hair and pointed a knife at I.S.

The Division interviewed S.S. regarding that last incident. S.S. disclosed that she disliked being home without I.S., who worked late into the evenings at the hospital where she was employed and, at times, would sleep overnight. S.S. also claimed that her grandfather hit her when the girls were left in his care at their home. When I.S. was interviewed, she admitted she was overwhelmed, wanted help with the girls, and acknowledged that they needed placement in a residential facility. However, she denied that the children's grandfather hit them.

The Division effectuated an emergency removal of the girls from I.S.'s home on September 20, 2007. On September 24, 2007, the Division filed an Order to Show Cause and Complaint against I.S. and E.S. seeking custody and supervision of the children under both *N.J.S.A.* 9:6–8.21 *et seq.* (abuse and neglect) and *N.J.S.A.* 30:4C–12 (temporary custody, care, and supervision). At the return date of the Order to Show Cause, a Division caseworker provided background on the family's history with the Division and testified that I.S. had admitted that she was overwhelmed in caring for the children. The worker also testified that no other family members, including E.S., appeared to be able to care for the children. I.S.'s counsel also represented to the court that it was I.S.'s wish to have her daughters placed in a residential facility. At the conclusion of the hearing, the family court engaged in a dialogue with counsel about the proper procedure to follow under the authority granted to the Division and to the court under Titles 9 and 30:

> THE COURT: Let me ask you this, counsel. Is your client consenting that—I—I, obviously, can't make a finding of abuse and neglect on her part because there's no allegation of abuse or neglect on her part. Is she consenting then for this—for DYFS to have the care, custody and supervision of the children, because I don't think, unless she is, I can order that without there be[ing] any finding of—

[DEPUTY ATTORNEY GENERAL]: Well, Your Honor, the fortunate thing is that this matter is brought under two statutes. And the second one is Title 30. And part of Title 30 one of the things is where a parent is either unwilling and also unable to provide the necessary care, maintenance, health and education, supervision of a minor child. And, I think, that's what the allegation, essentially—as I understand the caseworker's testimony, that due to the children's extensive destructive behavior and the fact that mom might be overwhelmed with their care that, at least, at some point at this time, she's unable to provide for their proper protection and maintenance. That's not Title 9, that's not neglect and abuse. But it does allow and give the Court the authority and jurisdiction to be able to place the children in the custody of the Division.

. . . .

[DEFENSE COUNSEL]: My client, simply, wants help for her children. To the extent that the [S]tate would come in and expedite those things that are necessary, she would have the Court order Title 30 in on her behalf. But, to the extent that they will continue even past or should it develop that [the Division of Developmental Disabilities] actually goes ahead and does step away and allow her—because she has all this time done everything, you know, in the way of petitioning and applying, and what have you, to have her children placed. She wishes to continue on her own, except that it's moving so slowly. . . .

So, hopefully, DYFS can step in; do what's necessary; and step away. And she would have no objection to that.

At the conclusion of the proceeding on the Order to Show Cause, the court found that the Division failed to establish by a preponderance of the evidence that the children were "abused or neglected" by I.S. as those terms are defined under *N.J.S.A.* 9:6–8.21(c). Nevertheless, the court determined that an emergency removal was necessary because I.S. was unable to protect her children from injuring themselves or others. It also granted the Division custody, care, and supervision of the twins under Title 30. The court ordered the Division to place the children in a residential facility and also ordered I.S. to undergo psychological evaluation.

At a review proceeding conducted on October 29, 2007, the court initially entertained an application by E.S. to obtain custody of S.S. only. The court observed that, ultimately, each twin should be placed with "whichever parent can deal with them best. And I don't know which of the two parents that will be because sometimes some kids are so disturbed that they can only respond to one parent[;] they can't respond to the other." With that, the

court denied, at that time, E.S.'s application. Also during that review proceeding, the court further noted, based on the Division's representation, that the twins had been accepted into Holley House Center, a residential treatment facility. The children were moved there on November 1, 2007.

At a January 11, 2008 fact-finding hearing on the Division's complaint, the court heard testimony from I.S., E.S., and the assigned Division caseworker. The testimony spanned the subjects of the twins' medical conditions, expert recommendations that the twins required placement for security and emotional-support reasons, and information about I.S.'s level of stress and her failure to adhere to doctors' instructions on caring for the twins. At the conclusion of the testimony, the court held that, under *N.J.S.A.* 30:4C–12, "by more than a preponderance of the believable evidence, and by clear and convincing evidence," neither parent was able safely to care for the twins. As a result, the court granted custody of the children to the Division, acknowledging, again, that it would need to consider the eventual permanent placement of the twins but declining to do so at that time. The court specifically noted that it was making no findings on the Division's Title 9 claim in its complaint, explaining that at the time the evidence was insufficient to establish that either parent abused or neglected the twins. The order entered by the court on January 11, 2008, continued the twins' placement at Holley House Center. At the required six-month periodic review conducted on July 8, 2008, *see N.J.S.A.* 30:4C–12, the court again continued the Holley House placement for the twins.

We next turn to the permanency proceedings conducted by the court and its determination as to the disposition of this matter.

B.

On September 15, 2008, the court conducted a permanency hearing at which the Division presented a plan for each of the twins. Each plan was presented by the Division based on the recommendations of the professional staff of Holley House. Es-

sentially, the plan provided that N.S. would remain in Holley House because she required continued residential services but that for S.S., reunification with her father E.S. would be pursued on her anticipated completion of services at Holley House. In its oral decision the court stated that

> on the basis of the information that I have today I am satisfied that the permanent plan for both girls, that being with [N.S.] which is individual stabilization upon completion of a residential program is appropriate and acceptable and with [S.S.], the reunification with [E.S.], again upon completion of the residential treatment program is appropriate and acceptable.
>
> . . . .
>
> This is an exception to the requirement to file a termination of parental rights for the following compelling reasons which is that both girls have significant emotional problems and are currently in a residential facility and the plan is not termination of parental rights at this point but reunification with their parents at the appropriate time.

On December 11, 2008, the twins' Law Guardian moved for unsupervised visits between E.S. and S.S., which the court granted. Apparently, before the next court appearance, on March 25, 2009, S.S. was discharged from Holley House and began to reside with her father, who lived in Pennsylvania. That action was reported to the court on April 2, 2009, when the Division advised the court that S.S. had been returned to E.S.'s custody on March 25, 2009, but remained under the Division's care and supervision. The Division's report on that date included, again largely based on information the Division received from Holley House professionals, that N.S. required continued residential placement and that I.S. required additional services.

On April 22, 2009, I.S. filed an emergent application for visitation with S.S. The court granted I.S. visitation on a bimonthly basis to take place in Pennsylvania where E.S. lived with S.S.

On May 27, 2009, I.S. filed a motion seeking to have the Division conduct a bonding evaluation. The court denied the application, explaining that such evaluations were only necessary if the court was evaluating the termination of I.S.'s parental rights or "the ultimate question of custody." I.S.'s attorney represented that I.S. wished to have the twins returned to her custody on I.S.'s

completion of the Division's recommendations and the twins' completion of treatment. She requested that the Division prepare a transition plan with increasing visitation—as the Division had created for E.S. in respect of S.S.—so that the twins could be returned to her. The record does not reveal that any formal motion to that effect was filed.

On August 26, 2009, the court conducted another permanency hearing concerning N.S. On the basis of the record presented, the court found that I.S. had complied with the Division's services and, therefore, accepted the Division's plan to return N.S. to I.S. after a period of unsupervised visits. At an October 29, 2009 hearing, the Division advised the court that N.S. had been returned to I.S.'s custody on September 24, 2009.

At the conclusion of that proceeding, the court ordered the Division to continue care and supervision of the twins. It determined that a "Compliance Review" and "Custody Hearing" would be required because S.S. had been placed in the custody of E.S., who was not S.S.'s custodial parent before the commencement of the custody, care, and supervision proceedings in September 2007. The hearing was scheduled for January 27, 2010, and at its commencement the court explained that, in accordance with *New Jersey Division of Youth & Family Services v. G.M.*, 198 *N.J.* 382, 968 *A.*2d 698 (2009), it first would determine

> whether it [was] safe to return the children home and then, since there is a custody matter,[ ] determine whether there's been a substantial change in circumstances ... since September of 2007.
>
> If the answer to that is, "Yes." Then we get into the custody hearing.

The court heard from Dr. Ronald Gruen, who had conducted bonding evaluations of E.S. and S.S., as well as I.S. and S.S. Based on his observations, Dr. Gruen opined that I.S. was dismissive of S.S.'s feelings, that S.S. was nervous and tense when I.S. entered the room, that interaction between the two was "negative," that S.S. did not want to return to I.S.'s custody, and that it was

psychologically unsafe for S.S. to reside with I.S.[2] He further testified that S.S. seemed happy with E.S. and had established a routine in his home. At the conclusion of his testimony, the court adjourned the proceedings to allow I.S. to obtain her own expert.

When the proceedings resumed on June 24, 2010, I.S. presented neither expert testimony contesting the Division's expert nor evidence opposing S.S.'s reunification with E.S. Testimony was elicited from E.S. and a Law Guardian case worker that S.S. was receiving special services in her current school district, that E.S. was receptive to S.S.'s needs, and that it was in S.S.'s best interests to remain in E.S.'s custody.

Based on the record, the court issued an oral decision and subsequent written orders granting E.S. sole custody of S.S., and I.S. sole custody of N.S. The court stated that, based on its observations and I.S.'s lack of empathy towards S.S., "it [was] not safe to return [S.S.] to her mother's care." During the proceedings, I.S. was removed from the courtroom after repeated warnings from the court not to be confrontational or to disrupt the proceedings by interjecting. She left with N.S., and the proceedings continued.

The court proceeded to a best-interests-of-the-child assessment, referring to *N.J.S.A.* 9:2–4, and determined that granting E.S. custody of S.S. was in S.S.'s best interests. The court noted, with respect to parenting time of the noncustodial parent to each of the twins: "This Court does [this] with a heavy heart. I am not granting parenting time to either parent with the other child unless they agree to it amongst themselves." The court entered an order to that effect under the FM[3] docketed matter.

---

[2] Dr. Gruen testified that at the bonding evaluation, S.S. told I.S., "You hurt me and your boyfriend hurt me and I don't want to go back with you and I don't want to live with you."

[3] The docket type opened during the pendency of this action was FM, which consists of divorce, marriage nullity, and separation maintenance matters. Other docket types include: FD, which consists of child custody, visitation, child

I.S. filed an appeal with the Appellate Division that raised two arguments pertinent to the appeal before us: 1) whether the family court inappropriately authorized the Division's indefinite custody, care, and supervision of her children under *N.J.S.A.* 9:6–8.50(c), when the court's action was not tethered to a finding of abuse or neglect; and 2) whether *N.J.S.A.* 30:4C–12's provision of specialized services to a child in need, and invocation of a best-interests-of-the-child analysis, can support the court's transfer of custody of S.S.—from I.S. to E.S.—when I.S. was not the cause of S.S.'s unsafe condition.

## C.

On August 31, 2011, the Appellate Division issued an opinion affirming the trial court's judgments. *N.J. Div. of Youth & Family Servs. v. I.S.*, 422 *N.J.Super.* 52, 25 *A.*3d 1214 (App.Div. 2011). The panel first explained that the family court appropriately conducted a single fact-finding hearing on January 11, 2008, and used its findings as a basis on which simultaneously to dispose of both the Title 9 and Title 30 actions. *Id.* at 67–69, 25 *A.*3d 1214.

With respect to continuing jurisdiction on the basis of Title 9, the panel read *N.J.S.A.* 9:6–8.50(c) as authorizing the court's continued jurisdiction over care, custody, and supervision proceedings filed under Title 9, notwithstanding that the family court determined neither I.S. nor E.S. had abused or neglected the twins under *N.J.S.A.* 9:6–8.21:

> "If the facts sufficient to sustain the complaint under [Title 9] are not established, *or the court concludes that its assistance is not required on the record before it,* the court shall dismiss the complaint and shall state the grounds for the dismissal." *N.J.S.A.* 9:6–8.50c. It is clear from this language that under Title 9, a court is not

support, paternity, medical support, and spousal support in non-divorce matters; FN, which consists of abuse and neglect matters; FG, which includes termination of parental rights matters; FC, which consists of child placement review matters; FL, which consists of kinship legal guardianship matters; and FV, which consists of domestic violence matters. *E.g.,* Administrative Directive # 08–11 (Aug. 15, 2012); Administrative Directive # 16–83 and 14–83 (Sept. 30, 1983).

limited to a finding of abuse or neglect before exercising continuing jurisdiction over a proceeding instituted under Title 9. *G.M., supra,* 198 *N.J.* at 399–400[, 968 *A.*2d 698]. However, in the absence of abuse or neglect, the court must be satisfied its assistance is still required before continuing to exercise jurisdiction over the matter. *N.J.S.A.* 9:6–8.50.

[*I.S., supra,* 422 *N.J.Super.* at 68, 25 *A.*3d 1214 (emphasis in original).]

Furthermore, in light of the varied circumstances in which Title 30 actions arise, including after the Division's emergency removal of a child, the panel found that the court appropriately granted the Division custody, care, and supervision of the twins under the authority conferred by *N.J.S.A.* 30:4C–12. *Id.* at 69, 25 *A.*3d 1214. Thus, addressing the procedures used by the family court, the panel affirmed the court's ability to proceed under concurrent Title 9 and Title 30 jurisdiction. *Id.* at 72, 25 *A.*3d 1214.

With respect to the family court's substantive factual findings, the Appellate Division deferred to the trial court's findings, noting that the trial court indicated that it applied the clear and convincing evidence standard, as well as the applicable preponderance of the evidence standard, in reaching its finding that neither parent had the ability to care for or meet the needs of the twins. *Id.* at 69, 25 *A.*3d 1214.

Finally, the panel addressed the consolidated " '*GM* /custody/disposition' hearing" conducted on January 27, 2010, which the trial court used to resolve the question of each child's custody, and related parenting rights, following their discharge from the residential program where each child received specialized services. *Id.* at 70, 25 *A.*3d 1214. Addressing the procedure used by the trial court, the panel explained that the "purpose [of such hearings] is to determine whether a child who has been in the care, supervision, and custody of the Division 'may be safely returned to the custody of the parent from whom the child was removed.' " *Ibid.* (quoting *N.J. Div. of Youth & Family Servs. v. N.D.,* 417 *N.J.Super.* 96, 107, 8 *A.*3d 809 (App.Div.2010)). Here, the panel agreed with the trial court that despite finding that S.S. could not be returned to I.S. safely, an exception to the mandatory initiation of a guardianship and termination of parental rights proceedings

applied because the noncustodial parent, E.S., was an appropriate placement for S.S. *Ibid.* (citing *N.J. Div. of Youth & Family Servs. v. R.D.*, 207 *N.J.* 88, 121–22, 23 *A.*3d 352 (2011)). The panel deemed it "appropriate for the court to then consider, as part of its 'best interests' analysis, those factors a court would typically consider in making any custody determination, as outlined in *N.J.S.A.* 9:2–4." *Id.* at 70, 25 *A.*3d 1214.

Turning to the substantive finding of the trial court, the panel concluded that it was satisfied that the custody determination was supported by substantial credible evidence and affirmed the trial court's custody order. *Id.* at 71, 25 *A.*3d 1214. The panel further determined that the trial court's refusal to order visitation did not constitute a de facto termination of I.S.'s parental rights, *id.* at 73, 25 *A.*3d 1214 that it was not error to include I.S.'s in-court behavior in its consideration when making its findings, *id.* at 73–74, 25 *A.*3d 1214 and that even if the latter were error, it was harmless, *id.* at 74, 25 *A.*3d 1214.

I.S. filed a motion for reconsideration with the Appellate Division, which was denied. *N.J. Div. of Youth & Family Servs. v. I.S.*, 423 *N.J.Super.* 124, 126, 30 *A.*3d 1073 (App.Div.2011). In connection with that reconsideration motion, the Division agreed that *N.J.S.A.* 9:6–8.50(c) cannot be interpreted to continue a court's jurisdiction in the absence of a finding of abuse or neglect without causing an unnecessary and unwarranted expansion of the statutory plain language. Instead, the Division asserted its right to act based on *N.J.S.A.* 30:4C–12. Nevertheless, the Appellate Division again rejected I.S.'s claim of error that Title 9 did not permit the court's continued and indefinite jurisdiction over a child when the court does not make a finding of abuse or neglect. *I.S., supra,* 423 *N.J.Super.* at 125–26, 30 *A.*3d 1073. The panel noted, however, that its previous opinion was not intended to alter the well-established standards of proof that applied in Title 9 and Title 30 proceedings. *Id.* at 126, 30 *A.*3d 1073. The panel explained that although Title 30 requires clear and convincing evidence that termination of parental rights is in a child's best interests, all

other Title 30 and Title 9 proceedings, including abuse and neglect proceedings, are governed by the lower preponderance of the evidence standard. *Ibid.* (citing *N.J.S.A.* 9:6–8.46(b)(1)).

I.S. filed a petition for certification with this Court, which was granted. 209 *N.J.* 232, 36 *A.*3d 1063 (2012). This Court also granted amicus curiae status to the Statewide Parent Advocacy Network (SPAN), Legal Services of New Jersey (LSNJ), and the American Civil Liberties Union of New Jersey (ACLU).

## II.

### A.

Before this Court, I.S. relies on *N.J.S.A.* 9:6–8.50(c)'s plain language as not authorizing courts to grant the Division continued custody of a child in the absence of abuse or neglect findings. She argues that the statute requires courts to dismiss Title 9 complaints if abuse or neglect is not found "or the court concludes that its assistance is not required." *N.J.S.A.* 9:6–8.50(c). She points to the two grounds for dismissal, which are provided for by statute, and the absence of any ground on which a court can retain jurisdiction. She argues that the Appellate Division's statutory interpretation, which allows a court to maintain jurisdiction when "its assistance is still required," *see I.S., supra,* 422 *N.J.Super.* at 68, 25 *A.*3d 1214, is far too vague of a standard and an unnecessary expansion of the statute.

I.S. also contends that *N.J.S.A.* 30:4C–12 should not be read to permit the Division to initiate a cause of action against a parent who is unable to meet a child's needs and who seeks specialized care for that child. According to I.S., *N.J.S.A.* 30:4C–12 requires specific evidence of one of the four grounds of parental unfitness or equivalent parental failures detailed in the statute to permit the court to grant the Division custody, care, or supervision of a child, and that the statute only authorizes courts to approve limited, six-month interventions by the Division.

Finally, relying on *N.D.*, *supra*, 417 *N.J.Super.* at 113, 8 *A.*3d 809, I.S. argues that the trial court erred in applying *N.J.S.A.* 9:2–4's best-interests-of-the-child analysis to evaluate S.S.'s custodial placement with E.S. I.S. contends that the reference in *N.J.S.A.* 30:4C–12 to "best interests" is not to invoke consideration of the Title 9 factors in dispositions other than whether to place a child in the custody, care, or supervision of the State.

### B.

On the issue of the court's jurisdiction under Title 9, the Division agrees with I.S. that the Appellate Division's assertion that jurisdiction under Title 9 may continue even absent a finding of abuse or neglect is an unnecessary expansion of the plain meaning of *N.J.S.A.* 9:6–8.50(c). However, the Division argues that Section 12 of Title 30, unlike Title 9, does not require specific culpability determinations to authorize its intervention into a family requiring its services. The Division maintains that the lack of a culpability requirement does not render Section 12 "amorphous or standard-less," as I.S. contends, because Section 12 requires a showing that the parent has failed to ensure the health and safety of the child and that the child's best interests require his or her placement in the Division's care.

The Division also contends that it complied with the six-month time limitation of *N.J.S.A.* 30:4C–12. The court promptly presided over a summary hearing when each of the twins completed her residential program of services, which all parties agreed was necessary for their health and safety. Moreover, the Division contends that the trial court did not err in applying *N.J.S.A.* 9:2–4's best-interests-of-the-child analysis in the pending custody matter, particularly when I.S. was on notice that the court would be reviewing the twins' permanent custody placement.

### C.

The Law Guardian for S.S. contends that courts should have authority under Title 9 to assist families in crisis, even absent a

finding of abuse or neglect. Such a reading of the statute is urged as consistent with recognizing the State's *parens patriae* role and empowering courts to protect the welfare of children. The Law Guardian also submits that, after the twins were appropriately placed under the Division's care, the trial court's compliance hearings satisfied the six-month requirement of *N.J.S.A.* 30:4C–12. And, the Law Guardian maintains that the trial court appropriately applied the factors in *N.J.S.A.* 9:2–4 when assessing the change of custody for each of the children.

## D.

Amici curiae take no position on the interpretation of *N.J.S.A.* 9:6–8.50(c). Instead, they focus their arguments on the authority granted to trial courts under Title 30.

SPAN asserts that a "mix-and-match" approach to child-welfare proceedings is inconsistent with the legislative scheme requiring different standards of proofs under Titles 30 and 9 and that it will deter parents from seeking the Division's assistance out of fear of the termination of their parental rights.

LSNJ asserts that the Division should have provided residential treatment to the twins pursuant to *N.J.S.A.* 30:4C–11. LSNJ contends that the Division's decision to proceed under Section 12 resulted in the failure to abide by the statute's time limit for proceedings and brought about a de facto termination of I.S.'s parental rights without a showing that I.S.'s conduct was linked causally to the twins' harm.

The ACLU takes the position that long-term intrusion into family autonomy requires a showing of clear and convincing evidence. When the practical effect of action taken under *N.J.S.A.* 30:4C–12 is the permanent removal of a child from a custodial parent, the ACLU argues that the clear and convincing evidence standard should apply and that the Division should be required to show a causal link between the immediate or potential serious harm faced by the child and the parent's conduct.

## III.

■ The appeal before us concerns primarily questions of statutory interpretation. We consider two provisions that are in distinct schemes designed to allow the Division to provide care, custody, and supervision to children in need of services. We first turn to the issue concerning Title 9.

After a court evaluates allegations of abuse and neglect to determine whether charged conduct renders a child "abused or neglected" as defined under *N.J.S.A.* 9:6–8.21(c), *N.J.S.A.* 9:6–8.50(c) provides:

> If facts sufficient to sustain the complaint under this act are not established, or the court concludes that its assistance is not required on the record before it, the court shall dismiss the complaint and shall state the grounds for the dismissal.

■■■■■■ A court's goal in construing a statute is " 'to discern and effectuate the Legislature's intent.' " *State v. Lewis*, 185 *N.J.* 363, 369, 886 *A.*2d 643 (2005) (quoting *State v. Brannon*, 178 *N.J.* 500, 505, 842 *A.*2d 148 (2004)). In doing so, we look first and primarily to the plain language of the statute. *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). "Where a statute is clear and unambiguous on its face and admits of only one interpretation, a court must infer the Legislature's intent from the statute's plain meaning." *O'Connell v. State*, 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002).

In this instance, we need go no further than the plain language to glean the legislative intent of the provision in question. Indeed, when previously interpreting subsection (c) in *G.M.*, *supra*, we explained that "[u]nder Title Nine, after the fact-finding hearing, the court may dismiss the complaint if it concludes that either its assistance is not required on the record before it, or the Division fail[s] to establish abuse or neglect." 198 *N.J.* at 401, 968 *A.*2d 698. In *G.M.*, unlike the matter presently before us, we determined that the court maintained jurisdiction under Title 9 "because the trial court inferentially concluded that its assistance was required *and also made a finding of abuse or neglect.*" *Id.* at 401, 968 *A.*2d 698 (emphasis added). There was no intimation in *G.M.*

that a court may keep a Title 9 action open when the court determines that it does not find abuse or neglect. Such a conclusion flies in the face of the words chosen by the Legislature.

*N.J.S.A.* 9:6–8.50(c) is directory in nature. It provides that the court "shall" dismiss the complaint and state the reasons for doing so. The statute reflects a legislative disinclination to keep an open-ended abuse and neglect action hanging over a parent's head. Subsection (c) allows the court two bases for dismissing an action; it does not provide two bases for continuing an action. The dismissal subsection must be read in conjunction with *N.J.S.A.* 9:6–8.50(a), which states what is required to authorize the court's jurisdiction:

> If facts sufficient to sustain the complaint are established, the court shall enter an order finding that the child is an abused or neglected child and shall state the grounds for said findings.

Based on a finding of abuse or neglect, the court can proceed to enter orders of protection. *See N.J.S.A.* 9:6–8.50(d). It may make referrals to the Division and enter orders to enable the provision of services to the abused or neglected child and to the family, but all premised on the finding of abuse or neglect. *See N.J.S.A.* 9:6–8.50(e).

█ It is our obligation when seeking to effectuate the Legislature's intent to be cognizant of "the entire scheme of which a provision is 'a part.'" *Headen v. Jersey City,* 212 *N.J.* 437, 451, 55 *A.*3d 65 (2013) (citing *Merin v. Maglaki,* 126 *N.J.* 430, 436, 599 *A.*2d 1256 (1992)); *see also Boardwalk Regency Corp. v. N.J. Casino Control Comm'n,* 352 *N.J.Super.* 285, 300, 800 *A.*2d 157 (App.Div.), *certif. denied,* 174 *N.J.* 366, 807 *A.*2d 197 (2002) ("Legislative intent is to be gleaned from the entire statute, ... read so that each provision aligns with the intent of the entire act."). It contorts the dismissal subsection, *N.J.S.A.* 9:6–8.50(c), to read it as conferring broader jurisdiction on the family court to act—in the absence of a finding of abuse or neglect—than that which subsection (d) and (e) plainly require: a finding of abuse or neglect. Indeed, the entire argument over-emphasizes one clause in subsection (c) and results in a misreading of the language "its

assistance is not required" as if it were an affirmative grant of power to assert jurisdiction. It is not.

As the Division itself concedes, that interpretation brings about an unnecessary expansion of jurisdiction under Title 9. Such an expansion is unnecessary because the Legislature has provided ample alternative means to the Division to ensure that a child requiring assistance does not slip through the network of statutory mechanisms available to provide assistance to a family or child in need of services. As occurred in this matter and underscored during oral argument, the Division usually pleads Title 9 and Title 30 claims concurrently in order to facilitate the efficient processing of assistance to the family, particularly to the child who is the focus of the inquiry.

That point also was made in a recent Appellate Division appeal addressing, as here, concurrently pled Title 9 and Title 30 claims. The issue of the continuing vitality of the Title 9 action, after there was no finding of abuse or neglect, was at the center of the panel's attention. The Appellate Division concluded, just as we do here, that

> when the abuse or neglect proceeding is terminated without a finding that the allegations in the complaint are substantiated, the Title 9 action should be dismissed after exercise of jurisdiction under Title 30 and orders should be entered in accordance with the standards and procedures pertaining to Title 30 litigation. [*N.D., supra,* 417 *N.J.Super.* at 109, 8 *A.*3d 809.]

More recently, the Appellate Division in *New Jersey Division of Youth & Family Services v. T.S.,* 426 *N.J.Super.* 54, 63–64, 42 *A.*3d 942 (App.Div.2012), consistent with the reasoning of *N.D., supra,* and the plain language of *N.J.S.A.* 9:6–8.50(c), held that the family court lacks authority to enter Title 9 orders when "it finds that the child has not been abused or neglected."

Following the clear direction from the Legislature in the language of *N.J.S.A.* 9:6–8.50(c), which directs dismissal when the court concludes that the facts to sustain the complaint do not support a finding of abuse or neglect, we conclude that there is no basis on which to stretch indefinitely a court's Title 9 jurisdiction in abuse and neglect proceedings when the family court is unable

to sustain a finding of abuse or neglect. Therefore, based on the plain language of subsection (c), we hold that the trial court erred in not dismissing the Division's complaint, which was pled on the basis of Title 9 at the fact-finding hearing following the Division's Order to Show Cause.

To the extent that the Appellate Division decision held otherwise in respect of the family court's orders and judgment entered, we reverse that part of the judgment. Because the trial court determined that I.S. had not abused or neglected N.S. or S.S., which is adequately supported by the record and to which we defer, the trial court should not have continued to enter orders under Title 9. *See Cesare v. Cesare,* 154 *N.J.* 394, 413, 713 *A.*2d 390 (1998) (explaining that "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding" and conclusions that flow logically from those findings). Going forward, as mandated by the plain language of the statute, the family court "shall dismiss the [Title 9] complaint" when it does not find that the Division has established facts sufficient to sustain the abuse or neglect complaint. *See N.J.S.A.* 9:6–8.50(c).

The trial court should have turned to the alternative basis found in Title 30, on which the Division sought to provide care, custody, and supervision to the children in need of services. Thus, we next turn our attention to the propriety of the trial court's orders granting and then continuing the Division's custody, care, and supervision of the children in this action under *N.J.S.A.* 30:4C–12.

IV.

A.

 The Legislature has provided several statutory grounds on which a family court can order the provision of services, care, and supervision through the Division. In *A.L., supra,* we expressly noted that the Legislature has provided various means by which the state may protect children in our State. 213 *N.J.* at 9, 59 *A.*3d

576. The Division can offer services to a parent under certain circumstances with his or her consent. *See N.J.S.A.* 30:4C–11. Alternatively, on receipt of a referral indicating parental unfitness or equivalent concerns, "the Division can seek a court order to intervene and require a [parent] to undergo treatment, or seek other relief, if the best interests of the child so require." *A.L., supra,* 213 *N.J.* at 9, 59 *A.*3d 576 (citing *N.J.S.A.* 30:4C–12). Put another way, *N.J.S.A.* 30:4C–12 provides the means for the Division to effectuate services to children in need when a parent does not consent to the Division's supervision, care, or custody.

After all, *N.J.S.A.* 30:4C–12's purpose is to protect children. *See N.J. Div. of Youth & Family Servs. v. M.M.,* 189 *N.J.* 261, 293, 914 *A.*2d 1265 (2007). The statute is an acknowledged "additional tool afforded [to] the Division to discern the most appropriate course of action for a child and his or her family in need of the Division's assistance." *N.J. Div. of Youth & Family Servs. v. J.C.,* 423 *N.J.Super.* 259, 267–68, 32 *A.*3d 211 (App.Div. 2011); *see also T.S., supra,* 426 *N.J.Super.* at 65, 42 *A.*3d 942 (detailing Section 12's purpose as "protection of children from harm when the parents have failed or it is reasonably feared that they will" (internal quotation marks omitted)); *In re Adoption of Two Children,* 170 *N.J.Super.* 320, 328, 406 *A.*2d 468 (App.Div. 1979) (recognizing Section 12's purpose as "preservation and strengthening of family life"). Regardless of whether a finding of abuse or neglect is established under Title 9, the Legislature intended to permit the Division to obtain custody, care, or supervision of a child under Section 12. *M.M., supra,* 189 *N.J.* at 292, 914 *A.*2d 1265.

> A dismissal of a Title 9 action . . . does not foreclose further intervention by the Division pursuant to *N.J.S.A.* 30:4C–12 to protect a child who, although not abused or neglected, is in need of services to ensure [his or her] health and safety. The Legislature reformed the child welfare system to "protect children from abuse and neglect" by providing "services to at-risk children and families in order to prevent harm to their children." *N.J.S.A.* 30:4C–1.1(a). In doing that, the Legislature recognized that "the safety of children must always be paramount." *N.J.S.A.* 30:4C–1.1(c).
>
> [*T.S., supra,* 426 *N.J.Super.* at 64, 42 *A.*3d 942.]

Turning to the statute in question, *N.J.S.A.* 30:4C–12 lays out a multi-step process under which the Division may intervene with a family in need of its assistance and which may lead to the removal of a child from the custodial parent and placement in the Division's custody. According to the first paragraph of the statute, the initial step involves a referral to the Division, and it must be of a specific sort:

> Whenever it shall appear that the parent or parents, guardian, or person having custody and control of any child within this State is unfit to be entrusted with the care and education of such child, or shall fail to provide such child with proper protection, maintenance and education, or shall fail to ensure the health and safety of the child, or is endangering the welfare of such child, a written or oral complaint may be filed with the [D]ivision, or other entity designated by the commissioner, by any person or by any public or private agency or institution interested in such child.

Further, the referral requires investigation by the Division: "Upon receipt of a complaint as provided in this section, the [D]ivision, or other entity designated by the commissioner, shall investigate, or shall cause to be investigated, the statements set forth in such complaint." A parent or guardian (or like person having custody and control of the child), may, if circumstances warrant, be given the opportunity to file an application for care under *N.J.S.A.* 30:4C–11, which would result in converting the matter into a voluntary placement. On the other hand, if a parent or guardian acts to impede the Division's investigation, the Division may obtain the necessary relief from the family court. *N.J.S.A.* 30:4C–12.

That said, once the investigation is completed, the Division has a determination to make. According to the second paragraph of the statute,

> [i]f, after such investigation has been completed, it appears that the child requires care and supervision by the [D]ivision or other action to ensure the health and safety of the child, the [D]ivision may apply to the Family Part of the Chancery Division of the Superior Court in the county where the child resides for an order making the child a ward of the court and placing the child under the care and supervision or custody of the [D]ivision.

The third paragraph outlines the role of the court:

The court, at a summary hearing held upon notice to the [D]ivision, and to the parent, parents, guardian, or person having custody and control of the child, if satisfied that the best interests of the child so require, may issue an order as requested, which order shall have the same force and effect as the acceptance of a child for care by the [D]ivision as provided in [*N.J.S.A.* 30:4C–11]; provided, however, that such order shall not be effective beyond a period of six months from the date of entry unless the court, upon application by the [D]ivision, at a summary hearing held upon notice to the parent, parents, guardian, or person having custody of the child, extends the time of the order.

The multiple step process outlined above demonstrates a funneling by the Legislature, establishing limits that prevent the Division from becoming a roving commission to inquire into families' personal lives. Unlike Section 11, whereby a family voluntarily consents to Division care, custody, or supervision in recognition that a child, or family members, need the Division's services, Section 12 provides the Division with the means to facilitate services to children in need when the parent is absent or unwilling to consent. However, the statute puts important checks in place. First, the action by the Division must have been initiated by a referral through an oral or written complaint to the Division. Second, there must be an investigation by the Division that convinces the Division that the reason for the referral was justified. And, the Division must be able to demonstrate these steps have been followed appropriately. The Division must make an application to the Family Part, and in its application to the court, the Division must establish the aforesaid steps leading up to the Division's court application. Most importantly, as the third paragraph of the statute states, after reviewing the results of the Division's investigation determining that the child, as here, is in need of services to ensure his or her health or safety, the court must conclude that it is in the best interests of the child to award the Division an order of care, supervision, or custody. The court may then order the services that the Division's investigation revealed were necessary.

To the extent that I.S. and some amici argue that there must be the equivalent of Title 9 abuse or neglect level of culpability on the part of the parent in order to file a complaint

under Section 12, we reject that interpretation. The position is argued based on wording that appears at the outset of the first paragraph of Section 12. However, we are unconvinced that we should view, exclusively, similarity in some Title 9 phraseology as determinative of the statutory interpretation question before us. This is particularly true when the meaning being advanced appears to render the part of the statute to be construed inconsistent with the overall scheme of which it is a part. In interpreting a statute, we strive to give effect to every word rather than to ascribe a meaning that would render part of the statute superfluous. *Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety*, 120 *N.J.* 18, 26, 575 *A.*2d 1348 (1990). And, in order to give proper effect to the Legislature's intent, a provision must be read sensibly within the entire legislative scheme of which it is part. *See Headen, supra*, 212 *N.J.* at 451, 55 *A.*3d 65.

With *N.J.S.A.* 30:4C–12, the Legislature cut a broader swath than in Title 9. It authorized services to children who have not been abused or neglected, as those terms are defined in *N.J.S.A.* 9:6–8.21(c), but whose needs may be too complex and beyond a parent's or parents' ability to work through without the Division extending minimal supervision, or more intrusive involvement, coupled with services until that is no longer necessary. Imposing a fault-based finding in respect of a parent or parents would impede the apparent legislative intent to facilitate services to children in need when parental consent is withheld, a parent is absent, or parental involvement would itself be an impediment to the child's health, safety, or welfare.[4] The statute instead intends to provide the Division with flexibility when investigating certain categories of referrals of suspected parental unfitness or other

---

[4] In 1999, the Legislature amended the statute specifically to authorize the Division to take action under Section 12 "to ensure the health and safety of [a] child." *L.* 1999, *c.* 53, § 27. The Sponsors' Statement reinforced the Legislature's focus on protecting the health and safety of children. Assemb. 2951 (*Sponsors' Statement* ), 208th Leg. (N.J. Mar. 11, 1999) ("The safety of children is of paramount concern.").

complex situations where the parents are unable to provide a safe and healthy environment for a child.

Moreover, requiring a predicate, fault-based finding cuts against case law that has considered how Titles 9 and 30 operate independently from one another. *See M.M., supra,* 189 *N.J.* at 292, 914 *A.*2d 1265 (recognizing that Section 12 action is viable regardless of whether abuse or neglect is established under Title 9); *T.S., supra,* 426 *N.J.Super.* at 64, 42 *A.*3d 942 (noting succinctly that "dismissal of a Title 9 action ... does not foreclose further intervention by the Division pursuant to *N.J.S.A.* 30:4C–12 to protect a child who, although not abused or neglected, is in need of services to ensure [his or her] health and safety").

Granted, parental autonomy is diminished if relief is granted to the Division to assist a child through Section 12 because, at the very least, it is the Division and not a parent who will determine with court approval what services will be provided to a child, and where, and how, and when. Through Section 12, however, the Division steps in when a child needs help and parents cannot supply it. Importantly, Section 12 is less damaging to parents in that the child abuse registry, *see N.J.S.A.* 9:6–8.11, is not implicated. Moreover, it is temporary and must periodically be reviewed. We see no reason to impose a fault-based-finding requirement in order for the Division to make services available to parents under Section 12.

█ As the statute prescribes, the court is limited to entering an order lasting six months. *N.J.S.A.* 30:4C–12; *see also J.C., supra,* 423 *N.J.Super.* at 267–68, 32 *A.*3d 211. Prior to its expiration, the Division may apply for an extension of that order, requesting a summary hearing and disposition on its request. Because Section 12 is temporary relief, "*N.J.S.A.* 30:4C–12 is not a substitute for an abuse and neglect proceeding or a guardianship action." *J.C., supra,* 423 *N.J.Super.* at 267, 32 *A.*3d 211 (citing *G.S., supra,* 137 *N.J.* at 174, 644 *A.*2d 1088). However, "upon notice to the parent," the court—in its discretion—may extend the order provided that it is satisfied, by the preponderance of the

credible evidence, that the best interests of the child require continuation of that order. *N.J.S.A.* 30:4C–12; *see also In re Guardianship of K.L.F.*, 129 *N.J.* 32, 40, 608 *A.*2d 1327 (1992); *N.J. Div. of Youth & Family Servs. v. D.C.*, 118 *N.J.* 388, 394, 571 *A.*2d 1295 (1990). A court should not presume that a child's continued placement outside of the parent's home is or is not in the child's best interests. *J.C., supra,* 423 *N.J.Super.* at 268, 32 *A.*3d 211 (citing *K.L.F., supra,* 129 *N.J.* at 40, 608 *A.*2d 1327).

As is the case in other non-termination of parental rights Title 30 actions, the court must be satisfied when entering temporary relief under *N.J.S.A.* 30:4C–12 that the Division has proven by a preponderance of the evidence that it is in the best interests of the child to enter the relief requested. That same burden applies when the Division seeks to continue the provision of services after periodic review hearings conducted to ensure appropriate court oversight of the Division's plans for the child. We add only that the relief ordered under Section 12 can, and will, vary in each unique familial circumstance because best-interests-of-a-child determinations are extremely fact-sensitive and require tailored relief based on those circumstances.

### B.

Here, the trial court made specific findings based on expert testimony and I.S.'s own admissions that she was unable to care for the twins. After the Division effectuated an emergency removal of the children and filed an application for custody, care, and supervision of the twins, the trial judge found by more than a preponderance of the evidence that it was in N.S. and S.S.'s best interests to become wards of the State under *N.J.S.A.* 30:4C–12. The trial court further ordered their placement into a residential facility that could manage their medical and counseling needs—a solution that I.S. repeatedly sought from in-home therapists, hospital personnel, and the Division. Based on this information, which evidenced that I.S. was "fail[ing] to ensure the health and safety of [S.S. and N.S.]," the Division properly filed a complaint

seeking custody, care, and supervision of the child. *See N.J.S.A.* 30:4C–12.

At the fact-finding hearing on January 11, 2008, the trial court considered the Division's Title 9 and Title 30 applications. Though the court specifically found that neither E.S. nor I.S. had abused or neglected the twins, the court found by more than a preponderance of the evidence that it was unsafe for the twins to remain in I.S.'s care, that the twins—as all parties agreed— required treatment in a residential program, and that it was in the best interests of the children to be placed in the custody, care, and supervision of the Division. *See N.J.S.A.* 30:4C–12. We see no basis on this record to disturb those findings. The twins were deeply troubled children who were in desperate need of services. The family court's actions were wholly reasonable exercises of discretion, soundly based in record evidence. We affirm the orders granting the Division care, custody, and supervision of N.S. and S.S., and we further affirm the court's order of residential placement for each of the twin girls. The therapeutic residential placement was reviewed and brought to reasonable conclusion as to each child. The court ordered that N.S. return to I.S.'s custody at the conclusion of her residential program. And, after a period of unsupervised visits, the Division transitioned N.S. back home with her mother. The only issue that remains is the family court's custody action with respect to S.S.

## V.

At the conclusion of her therapeutic residential program, S.S. was discharged and went to live with her father, E.S., who did not have custody of her prior to the Division's involvement but had sought custody during the pendency of the child-protection action and been denied at that time. We note that the discharge of S.S. from her residential program took place before the court was notified of its occurrence. The Division reported it to the court after the fact, and to that extent, the facility acted ahead of the court. Prior to the discharge, unsupervised visits with her father

had been authorized by the court. And, at the time of S.S.'s release, I.S. had not completed her required therapeutic regimen.

When the court conducted a custody hearing in respect of S.S., it transferred custody of S.S. to her father. The custody order was entered under the FM docket, as the child-protective litigation was dismissed at the same time. In making its determination, the family court analyzed the *N.J.S.A.* 9:2-4 best-interests factors.

In *G.M., supra,* we recognized that a noncustodial parent who obtains full-time care of a child after the initiation of child-protection proceedings "may always initiate a request for a change in custody," which involves a changed–circumstances inquiry and, ultimately, becomes a best-interests analysis. 198 *N.J.* at 402 n. 3, 968 *A.*2d 698. Here, that process was not followed precisely, but E.S. did make an application for custody of S.S. during the pendency of the child-protection litigation, which was denied at the time because the trial court did not believe it had the information necessary to perform the appropriate analysis for S.S., who was only beginning her therapeutic programs. That said, the application placed the custody question in the mix of questions that needed to be resolved in light of the children's health and safety issues.[5] And the court in this matter used a best-interests analysis that employed the factors set forth in *N.J.S.A.* 9:2-4, which is commonly used in a variety of family matters before a court when making an initial custody determination or a change in custody is requested. *See, e.g., Morgan v. Morgan,* 205 *N.J.* 50, 64–65, 12 *A.*3d 192 (2011); *Baures v. Lewis,* 167 *N.J.* 91, 115, 770 *A.*2d 214 (2001); *Kinsella v. Kinsella,* 150 *N.J.* 276, 317, 696 *A.*2d 556 (1997).

Although E.S. should have been required to show that S.S.'s placement with him was in her best interests after filing a changed

---

[5] In fact, the parents were still litigating the twins' custody at the time the Division effectuated an emergency removal of the children, and the matter remained open before the Family Part.

circumstances application, in view of the timing of all family members' progress toward more healthy relationships, it would require blinders for this Court not to recognize that granting custody to E.S. was an appropriate disposition to end the Title 30 proceedings. In our view, the court's ultimate action was the only one that could have been judicially imposed. At the time of S.S.'s release, I.S. had not completed her required therapeutic regimen. Moreover, at the hearing, I.S. presented no expert evidence to establish that it would be safe to return S.S. to her mother's custody. Therefore, it would not have been consistent with the court's continued responsibility to act in the best interests of S.S.'s health and safety to return her to her mother's custody at that time. When custody issues become intertwined with child-protection actions, then dispositional questions that lie at the intersection of the two matters become complicated by a parent's delay in achieving circumstances that make it safe for the child to return to the former custodial parent. *See, e.g., J.D., supra,* 417 *N.J.Super.* at 21–22, 8 *A.*3d 236.

In sum, E.S. was the only appropriate parent to award custody to at the dispositional conclusion of this fact-sensitive Title 30 proceeding. The court applied a best-interests test, and we have no difficulty deferring to the factual findings and conclusions the court reached on this record. S.S.'s best interests were served by the court's grant of custody over S.S. to E.S. when disposing of the Title 30 proceedings. Moreover, we do not find that I.S. was deprived of due process as a result of the proceedings that occurred.

 Although it is preferable for the court to ensure that there occurs separate and distinct proceedings at which Title 30 actions are adjudicated to disposition and FM custody matters are adjudicated, this case shows that procedure may not always prevail. In this matter, the consolidated procedure followed by the court did

not result in any cognizable harm to I.S.[6] The parties had been litigating the twins' custody at the time the Division initiated the child-protection proceedings, and the custody matter remained open before the Family Part. I.S. may move before the Family Part to request alteration of the custodial arrangement for S.S. at any time in light of changed circumstances.

## VI.

The Appellate Division judgment upholding the June 24, 2010 Order, which awarded E.S. custody of S.S., is affirmed as modified herein. The Family Part's order is affirmed based on the authority and flexibility afforded the court under *N.J.S.A.* 30:4C–12 to assist families requiring the Division's services. To the extent that the family court's order was based on continued jurisdiction under *N.J.S.A.* 9:6–8.50(c), absent a finding of abuse or neglect, it is reversed.

*Affirm In Part/Reverse In Part*—Chief Justice RABNER Justices LaVECCHIA, ALBIN, HOENS, PATTERSON and Judge RODRÍGUEZ (temporarily assigned)—6.

*Opposed*—None.

---

6 Unlike in *G.M., supra,* the family court informed the parties in this matter in advance of its intention to adjudicate the completion of the Title 30 proceedings, as well as the open custody dispute between the parents. In fact, the trial court heard testimony under oath from the Division's witnesses, experts, E.S., and I.S. The court then recessed in order to provide I.S. with an opportunity to obtain an expert and obtain evidence to substantiate why S.S. should be returned to her custody. I.S. did not do so. On this record, we find those procedures were sufficient to protect her constitutional right against "governmental procedures that tend to operate arbitrarily." *See Doe v. Poritz,* 142 *N.J.* 1, 108, 662 *A.*2d 367 (1995) (emphasis omitted). That is, the procedures "neither assaulted [I.S.'s] rights nor contravened [our] holding in *G.M.*" *See J.D., supra,* 417 *N.J.Super.* at 23, 8 *A.*3d 236 (citing *G.M., supra,* 198 *N.J.* at 402, 968 *A.*2d 698).