**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1007-16T1

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

    Plaintiff-Respondent,

v.

C.C.,

    Defendant-Appellant,

and

S.J.,

    Defendant-Respondent.

_____

IN THE MATTER OF G.M.C.-J.,

    a Minor.

_____

        Submitted September 25, 2017 — Decided June 11, 2018

        Before Judges Accurso and O'Connor.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Union
        County, Docket No. FN-20-0027-16.

Joseph E. Krakora, Public Defender, attorney
for appellant (Joseph F. Kunicki, Designated
Counsel, on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent Division of Child
Protection and Permanency (Andrea M.
Silkowitz, Assistant Attorney General, of
counsel; Julie B. Colonna, Deputy Attorney
General, on the brief).

Williams Law Group, LLC, attorneys for
respondent S.J. (Allison Williams, of
counsel and on the brief; Elizabeth A.
Joyce, on the brief).

Joseph E. Krakora, Public Defender, Law
Guardian, attorney for minor (Danielle Ruiz,
Designated Counsel, on the brief).

PER CURIAM

Defendant C.C. (the mother) appeals from an October 20, 2016 order dismissing the within child protective services matter, filed and litigated pursuant to N.J.S.A. 30:4C-12. The Family Part judge terminated the matter when the Division of Child Protection and Permanency (the Division) ceased providing services to the mother, and the judge determined defendant S.J. (the father) was able to provide an adequate home for defendants' daughter, G.M.C.-J. (Gwen).[1] We reverse and vacate the dismissal order, and remand for further proceedings.

---

[1]  We use initials and pseudonyms to protect the identity of those involved.

2

At the time of Gwen's birth in July 2015, the mother advised the hospital staff she was addicted to and used heroin during the pregnancy.  There was no evidence the baby was harmed as a result, but the hospital staff notified the Division of her use of heroin during the pregnancy.

During its investigation that immediately followed, the Division learned the mother lived with the baby's maternal grandmother (the grandmother) and was prepared to care for Gwen with the grandmother's assistance.  The mother was also interested in substance abuse treatment and, while still in the hospital, successfully completed an inpatient detoxification program and entered into a methadone treatment program.

The mother and the father signed a Division safety protection plan, the terms of which included that the baby was permitted to live with the mother in the grandmother's home, as long as the mother's contact with the baby was supervised by the grandmother or the father.  The plan also provided the mother was to engage in substance abuse treatment.

To ensure the mother received ongoing services, the Division filed an order to show cause and a verified complaint against both defendants seeking care and supervision of the baby pursuant to N.J.S.A. 30:4C-11 and N.J.S.A. 30:4C-12.  At the

initial hearing on the order to show cause, the parties, represented by counsel, appeared and consented to the Division having care and supervision of their child.

At the conclusion of the hearing, defendants entered into a consent order, dated July 31, 2015. The principal terms of the consent order were that: (1) the parties share joint legal custody, with physical custody placed with the mother; (2) the mother have only supervised contact with Gwen; (3) the grandmother and the father act as the designated supervisors; (4) the father have liberal parenting time; and (5) the mother engage in substance abuse treatment and individual therapy.

The return of the order to show cause was on September 24, 2015. It was undisputed the parties were abiding by the July 31, 2015 order, the terms of which were placed into an order dated September 24, 2015. The new order included a provision the father was to care for Gwen when the grandmother worked (she worked five days a week), and the Division was to arrange for the mother to have psychological and psychiatric evaluations.

On January 7, 2016, the parties appeared for a summary hearing. The Division reported the mother was complying with services and her drug screens had been negative since she commenced treatment the previous July. The judge entered an order continuing the terms of the previous order. In addition,

4

because the psychological evaluation recommended such services, the mother was ordered to attend parenting classes and a MICA[2] program.

As a result of the father filing an application for an emergent hearing, on April 4, 2016, counsel and all parties, with the exception of the mother appeared in court. The Division reported the father had learned the mother had relapsed and entered into an inpatient facility, believed to be in Pennsylvania. The father sought an emergent hearing for the purpose of obtaining physical custody of the baby.

It was not known by those assembled in court where the mother was located. The Division had endeavored to find her before the hearing but were unsuccessful. The mother's attorney stated she had been out of the office the previous week (April 4, 2016 was a Monday) and had only learned of the emergent hearing earlier that day. She informed the court the mother was unaware of the hearing. Despite such fact, the court proceeded with the hearing in her absence.

Because the mother had relapsed, was unavailable to care for Gwen, and the father was a suitable caretaker of the baby, the judge transferred physical custody of the child to the

---

[2] MICA stands for "mentally ill chemically addicted."

5

father; defendants continued to share joint legal custody of the baby. The judge also ordered the mother's parenting time be supervised by the Division at its offices and that she continue with treatment previously ordered.

On July 7, 2016, all counsel and the parties, including the mother, appeared for a compliance review hearing. The Division reported the mother was doing well. She had been in the inpatient facility from March 28, 2016 to April 10, 2016 and, since leaving such facility, had been engaging in an intensive outpatient (IOP) MICA treatment in Pennsylvania, a six-day per week program she had discovered on her own. The mother testified she had three more months of treatment in the IOP program. In a "summary finding order" entered that day, the judge found the Division's continued care and supervision of the matter was warranted because of the mother's progress and participation in treatment.

At the conclusion of a summary hearing held on October 20, 2016, the judge terminated the litigation. At that time, it was reported that the mother had been successfully discharged from the IOP MICA treatment program in Pennsylvania, and was doing well in a "step-down" IOP in New Jersey, which she had selected without the Division's assistance. She anticipated completing the step-down program in mid-November.

6

A-1007-16T1

The Division argued the litigation should be dismissed because it was no longer providing any services for the mother, who was successfully securing any necessary treatment on her own. Further, defendants were privately arranging for the mother's parenting time between themselves, removing the mother's need to have the Division supervise her visitation. In addition, there was evidence the father was ably caring for the child.

The mother wanted the matter to remain open so she could make an application for the return of Gwen to her physical custody when her treatment ceased. However, the judge found it appropriate to terminate the litigation for the reasons advocated by the Division, and noted the mother could file a non-dissolution (FD) action in order to seek a change in the custodial and parenting time arrangement when she was ready.

## II

On appeal, the mother contends the judge erred when he terminated the matter without ordering a hearing on custody and parenting time, thus providing her "an opportunity . . . to be returned to status quo ante[.]" The mother also contends the judge failed to conduct a "proper evidentiary hearing" on October 20, 2016 before terminating the litigation.

7

We decline to address the latter contention because it was not raised before the Family Part judge, a fact the mother readily concedes. We do not consider issues that were not properly presented to a trial judge, "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). As neither consideration is present, we do not address this particular question.

N.J.S.A. 30:4C-12 authorizes the Division to provide services to children in need. N.J. Div. of Youth & Family Servs. v. I.S., 214 N.J. 8, 14 (2013). Here, the primary relief the Division sought and initially provided was referring the mother to services to help her overcome her substance abuse, so that she would parent her child. The Division also effectuated a custodial and parenting time arrangement to enable the mother to parent Gwen, albeit supervised.

As stated, when the mother relapsed and entered into a rehabilitation hospital, the court placed the baby in the father's physical custody at the conclusion of the emergent hearing. In our view, it was error to have transferred physical custody of the baby before the mother had notice of the hearing

8

and, in particular, the father's request for a transfer of custody. The mother's right to due process was not protected in this case.

A parent has a constitutional right to due process when a change in custody of his or her child has been requested, including the right to adequate notice and a fair opportunity to be heard with respect to such issue. See Div. of Youth & Fam. Servs. v. M.Y.J.P., 360 N.J. Super. 426, 464 (App. Div. 2004) (citing Matter of C.A., 146 N.J. 71, 93-94 (1996)). A proceeding to terminate a parent's right to the physical custody of a child is of sufficient importance such that it should not proceed unless the parent has been noticed of the proceeding or the parent has waived the right to be present. See Test v. Test, 131 N.J. Eq. 197, 200-01 (E. & A. 1942) (requiring adequate notice when custody of children is to be determined).

The mother's attorney had been away the week preceding the hearing and learned of it only hours before it commenced. She advised the court the mother was not yet aware of the proceeding, yet the judge did not take any steps to facilitate the mother's presence.

The hearing could have been delayed a few days or even longer to provide the attorney an opportunity to locate and communicate with the mother about the father's request for a

9

change in custody.  In the interim, Gwen could have been temporarily placed in the father's physical custody.  If the mother was noticed of the hearing but unable to leave the inpatient facility, she may have been able to appear at the hearing by telephone.  At the least, the mother could have consulted with and enabled counsel to adequately represent her interests at the hearing.

The mother is not seeking to vacate the order that transferred physical custody or continued such custody of Gwen in the father.  She is merely seeking a hearing so she can show why she is entitled to regain custody.  In light of the fact Gwen was removed from the mother's physical custody without due process, it is fitting she have that opportunity to correct the wrong that occurred here.  Therefore, the dismissal order is reversed and matter remanded for an evidentiary hearing on the issue whether the mother is entitled to physical custody of Gwen.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-1007-16T1