**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0158-15T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

M.B.,

    Defendant-Appellant,

and

K.W. and R.B.,

    Defendants.

_____

IN THE MATTER OF A.W. and
F.B., Minors.

_____

        Submitted June 1, 2017 — Decided August 8, 2017

        Before Judges Alvarez and Lisa.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FN-06-23-15.

        Joseph E. Krakora, Public Defender, attorney for appellant (Anthony Van Zwaren, Designated Counsel, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Jennifer Krabill, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant M.B. appeals from certain Family Part orders in abuse and neglect litigation that culminated in the placement of her now thirteen-year-old son, A.W., in the physical and legal custody of his father, and prohibit her from phone contact or visitation with the child. We affirm.

The matter began in August 2014, by way of a Title 9 complaint for care, custody, and supervision of A.W. and his two sisters, one of whom is now an adult. See N.J.S.A. 9:6-8.21 to -8.73. Shortly after the proceedings began, the oldest sister was placed with her father. A.W.'s other sister, now a toddler, was ultimately returned to M.B. and her husband, R.B. The issue that brought the family to plaintiff New Jersey Division of Child Protection and Permanency's (Division) attention was recurring domestic violence witnessed by the children, including A.W.

K.W., named a defendant on the complaint, is A.W.'s father and resides in New York. He regularly appeared in court, by phone

and in person. Over the course of fifteen court hearings, beginning on August 11, 2014, and ending on June 30, 2015, no expert testimony was presented, a Division caseworker testified only once, and K.W. testified briefly only once. At each court hearing, counsel reported to the judge developments since the last appearance, and the judge made adjustments to the children's status and the parents' obligations accordingly.

On February 23, 2015, M.B., along with her husband, stipulated that they were a family in need of services under Title 30. See N.J.S.A. 30:4C-12. By doing so, although Division records would reflect administrative substantiation of abuse and neglect related to the domestic violence, no adjudication would be made in the Title 9 proceeding; it was terminated.[1] The parents at that juncture were compliant with services.

Months prior to the termination of the abuse and neglect case, on November 14, 2014, A.W.'s father, K.W., filed for custody of his son under the abuse and neglect FN docket number. By

---

[1] A court order contemporaneously issued mistakenly stated that a finding of abuse and neglect was entered in the Title 9 litigation. Once this was discovered, the parties should have immediately brought the error to the attention of the court. In its brief, the Division has agreed to request the correction. Accordingly, we will not address M.B.'s fourth or fifth points in this appeal related to the error. It should not have required an appeal to correct the mistake, however.

December 3, 2014, even though no testimonial hearing was ever conducted related to his application, or formal consent placed on the record by M.B., K.W.'s home was investigated by the Division as a possible placement. A.W. and his younger sister were living in a resource home.

On April 10, 2015, the Law Guardian reported to the judge that A.W. was steadfast in his desire to live with his father, and that K.W. had also attempted to file for custody under the parties' old FM, or matrimonial, docket number. In any event, M.B. through counsel agreed to allow the child's custody to be transferred. Her attorney said:

> [S]he's not the happiest if Your Honor sends [A.W.] to live with his father. She indicates that she does want to work on her relationship with [A.W.] She actually was calling very consistently since the last court date to see when the therapy was going to start and was wondering why it took so long [] the therapy to start. She was hoping to have at least [] a couple of more sessions with [A.W.] prior to him leaving so I'm glad that the therapy is set to start.
>
> . . . .
>
> I'm asking that we have a set [visitation] schedule so that both parties understand how it's going to occur and where do we go from there, and if at all [] possible that he still be allowed to participate in some therapy with his mother that would be great. . . . [M.B.] was not actually wanting [A.W.] to go but I understand the position the [c]ourt is in at this point.

The court granted custody of A.W. to K.W. effective April 16. The judge noted that a therapist was "about to begin family counseling sessions between [A.W.] and [M.B.] and that sounds like something that will be very helpful. . . .  So the order will provide that [K.W.] is to cooperate in getting [A.W.] to the sessions that [the therapist] wants to have between [A.W.] and his mother."

At the next hearing on May 19, 2015, the Division's attorney said that K.W. had obtained a restraining order in New York prohibiting contact between A.W. and his mother.  Although inconsistent with that statement, the attorney also said the restraining order indicated it was subject to current orders issued in New Jersey regarding custody and visitation.  M.B.'s attorney responded that K.W.'s conduct had reinforced M.B.'s fears that he was going "to cut off her contact with" the child.

The judge said she would order K.W. to appear at the next court date, and requested a copy of the restraining order so that she could reach out to the New York family court judge.  She wanted to ensure that some effort to reinstate contact between mother and child would take place.

The following month, on June 3, 2015, the court reiterated:

> [T]he [c]ourt w[i]ll not dismiss [A.W.] and
> [K.W.] from the litigation at this point in
> time.  I have some serious concerns about how

we got to where we are today, specifically that [K.W.] was able to make it to just about every other court date until he got custody and then suddenly cannot be here and suddenly the visits aren't working and so on and so forth and to the point that a restraining order was obtained. So I need to have a better understanding of what's happening here before we can allow this case to proceed under an FD docket number.

I will state for the record that New Jersey still has jurisdiction in this case and New Jersey is retaining jurisdiction with respect to this child. And, [K.W.], you need to understand that, that any issues of custody and visitation are going to be addressed here in New Jersey, not in New York, and that is under a judge in this state determines that New York can hear the case, if that ever occurs.

. . . .

[B]ut with respect to the child those issues will be heard here in New Jersey.

The court went on to discuss the need to obtain guidance from an expert as to whether it was appropriate for M.B. to have contact with A.W., and the manner in which communication should occur.

Although the impetus is unclear from the record we have, approximately three weeks later, on June 30, 2015, A.W. met with the judge in chambers in the presence of his Law Guardian. The interview was recorded. Before beginning, the judge said: "I was hoping to put on the record the reason for this interview, but since all counsel are not here I'll conduct the interview as

6

requested and then perhaps somebody can enlighten me at some point."  The reason for the interview was never placed on the record.

After the interview, by which time M.B.'s attorney had arrived in court, the judge rendered her decision.  She ruled that because the child did not want to speak to his mother, no further contact would take place between M.B. and A.W.  The judge summarized her reason for the order in a few words — that M.B.'s conduct towards A.W. "was making him feel terrible about himself."  The judge added that the child needed a break.

The judge continued:  "I think that [M.B.] can make an application under the FD number to have [the contacts and visitation] reviewed.  This county will retain venue so the case would be heard here rather than [M.B.] having to go to North Jersey[2] to make her application, but that's what she's going to have to do."  She later reiterated:

> And any application to reinstitute contact between her and [A.W.] will be under the FD docket number, which if I can find we'll put in the order.  And, [M.B.'s counsel], I did indicate that venue would stay in Cumberland County at this point for that application to be made to make it easier for her to have it addressed.  What happens thereafter is up to whatever judge hears that application.

---

[2] This was likely a slip of the tongue, as M.B. and her children lived in Cumberland County and K.W. lived in New York.  From what we discern from the record, no one involved lived in North Jersey.

A-0158-15T2

Despite the judge's expressed intent to revisit contact between mother and son at a later time, that never occurred. The judge did not contact the family court that issued the restraining order in New York, nor was K.W. asked to explain the reason he obtained the restraining order. After the April 10 hearing, the record is silent on the subject of counseling for mother and son.

Included without objection in M.B.'s appendix is an "order of disposition" entered after the notice of appeal was filed. We discuss the order because of the sensitive nature of the issues here, despite the absence of a motion to supplement the record as required by the rules. See R. 2:5-4.

That January 8, 2016 FM "order of disposition" denied M.B. visitation or any modification of parenting time arrangements. It recited that "the parties were last in court on October 23, 2015 where the court denied [M.B.'s] request for custody modification of the minor child. [M.B.] asks that the court modify the current parenting time arrangement so as to allow her to visit her son." The order continues:

> 1. P[laintiff] [M.B.'S] request that the court enter an Order modifying the current parenting time arrangements is DISMISSED WITHOUT PREJUDICE. The court notes that the minor child has been residing in the state of New York as of June 2015 and thus ha[s] been residing outside the state of New Jersey for a period of six (6) months. Thus, [u]nder the

Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) because the minor child has lived in the state of New York for six (6) months the court finds that it does not have jurisdiction in regard to the case. Further, the court does not have jurisdiction in this case pending a resolution of this case to the appellate division. Thus this application is dismissed without prejudice.

2. No further relief is granted.

On appeal, M.B. raises the following points:

POINT I--THE TRANSFER OF CUSTODY TO A NON-CUSTODIAL PARENT COMBINED WITH THE TERMINATION OF LITIGATION WITHOUT A DISPOSITIONAL HEARING WAS DEFECTIVE.

POINT II--IT WAS IMPROPER FOR THE TRIAL JUDGE TO INTERVIEW THE CHILD WITHOUT NOTIFYING ALL COUNSEL; FAILING TO PERMIT COUNSEL FOR THE MOTHER OPPORTUNITY TO PRESENT QUESTIONS THE JUDGE; FAILING TO QUESTION THE CHILD AS TO HIS ABILITY TO DISTINGUISH TELLING THE TRUTH FROM TELLING A LIE; AND FAILING TO SWEAR HIM IN AS A WITNESS PURSUANT TO COURT RULE 5:8-6.

POINT III--M.B. WAS DENIED DUE PROCESS WHEN HER TWO CHILDREN WERE REMOVED FROM HER HOME WITHOUT AN EVIDENTIARY HEARING.

POINT IV--THE TRIAL COURT IMPROPERLY MADE FINDINGS OF ABUSE AND NEGLECT WHEN THE PARENT'S STIPULATION WAS ONLY FOR TITLE 30 SERVICES AND THERE WAS NO EVIDENCE OR TESTIMONY TO SUSTAIN EVEN AN ESTABLISHED FINDING OF ABUSE OR NEGLECT.

POINT V--IF THE MATTER WAS BEING CONVERTED TO A TITLE 30 ACTION THEN THE TITLE 9 ACTION SHOULD HAVE BEEN DISMISSED.

POINT VI--M.B. WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, HER ATTORNEY FAILED TO ENSURE

PROPER PROCEDURAL SAFEGUARDS AT THE INITIAL DODD HEARING, FAILED TO OBJECT TO CONVERTING THE MATTER TO TITLE 30 SERVICES WHILE NOT DISMISSING THE TITLE 9, AND FAILED TO OBJECT TO THE FN COMPLAINT BEING DISMISSED WHERE NO G.M. HEARING HAD BEEN HELD.

We consider Points I, II, III, and VI so lacking in merit as to not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). This includes, obviously, the claim of ineffective assistance of counsel. Ultimately, M.B. regained custody of her youngest child without the entry of a finding of abuse and neglect against her, and the litigation was dismissed, a favorable outcome.

It is quite clear, however, that the loss of contact been M.B. and A.W. was the unanticipated and regrettable outcome of procedural quirks in this case that we cannot remedy in this appeal from the FN orders. We begin by reiterating that the child's transfer to his father's custody was made with M.B.'s consent, and is therefore not subject now to review. Brett v. Great Am. Rec., 144 N.J. 479, 503 (1996) ("The doctrine of invited error operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error.").

Moreover, M.B.'s attorney as a matter of strategy could not have requested an evidentiary hearing because the child wanted to

10

live with his father, had suffered emotional harm from the domestic violence he witnessed in his mother's home, and did not want to talk to his mother. The attorney, acknowledging the judge's decision and her client's agreement, did raise the need for continued therapeutic intervention to assist in reinstating visitation between mother and son. The judge agreed. But the process which followed was not intended by any of the participants, the court, M.B., or A.W.'s Law Guardian.

No services were provided by the Division to advance the relationship between M.B. and A.W after April 2015. No one pursued the unanswered question as to the father's reasons for obtaining a restraining order barring contact between mother and child.

The judge who heard M.B.'s application under the FM docket might well have been unaware of the FN judge's expressed intent to allow M.B. to litigate the issue of visitation in her home county. We assume from the order that M.B. was unrepresented in that proceeding, and may not have made clear to the judge in the FM proceeding the assurances given to her and her attorney by the FN judge. The FM judge was correct on the law that the Uniform Child Custody and Jurisdiction Act, N.J.S.A. 2A:34-53 to -95, deprived New Jersey of jurisdiction because the child had lived in New York for more than six months. N.J.S.A. 2A:34-65.

As we noted in a different context, "[w]hen custody issues become intertwined with child protection actions then dispositional questions that lie at the intersection of the two matters become complicated . . . ." N.J. Div. of Youth & Family Servs. v. I.S., 214 N.J. 8, 41 (2013). In this case, that intersection resulted in M.B. consenting to the piecemeal disposition of the case, and the placement of a child who did not want to live with her with his father in exchange for the return of her youngest child and dismissal of the abuse and neglect case.

Since no appeal was filed from the FM order, it cannot be addressed in this decision. Thus, we are left with no alternative but to affirm the orders being appealed for the reasons we have stated. The termination of the FN litigation was a favorable outcome for M.B., and was one to which she consented.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0158-15T2