# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1895-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

    Plaintiff-Respondent,

v.

W.C.,

    Defendant-Appellant.

_____

IN THE MATTER OF D.M.,

    a Minor.

_____

Submitted January 16, 2019 – Decided February 4, 2019

Before Judges Koblitz and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FN-02-0303-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Victor E. Ramos, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith A. Pollock, Deputy Public Defender, of counsel and on the brief).

PER CURIAM

S.M. (Samantha)[1] and W.C. (Walter) are the unmarried biological parents of D.M. (David), who was born in November 2015. Walter appeals from the November 16, 2017 order terminating protective services litigation and continuing the parents' joint legal custody and Samantha's physical custody of David. The order, entered without a plenary hearing, continued Walter's weekend parenting time supervised by either one of the child's grandmothers, and required Walter to complete substance abuse treatment with negative alcohol screens prior to an application for a change in custody or parenting time.

In 2016, the Division of Child Protection and Permanency (Division) became involved with this family due to the parents' volatile relationship and Walter's substance abuse. When David was six-months-old, the family court granted the Division's application for care and supervision of the family and

---

[1] We use initials and pseudonyms to identify the parties to preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

A-1895-17T1

placed restraints on Walter's parenting time with David. The Division provided services in an effort to rehabilitate Walter and lift the restraints on his parenting time.

From the start of litigation, Walter was on notice that supervised parenting time would be unnecessary after he consistently tested negative for alcohol. He completed a substance abuse program at New Pathway, but after seventeen months of litigation and services, he continued to test positive for alcohol. Walter proposed that dismissal of the case be conditioned on his testing negative for alcohol. After the family court judge granted dismissal of the case without parenting time restraints conditioned on Walter testing negative, Walter tested positive. Given Walter's initial consent to the limitation on his parenting time in the event of a positive alcohol test, we affirm.

The family first became known to the Division in November 2015, when the hospital where David was born reported that Samantha expressed concerns about Walter visiting her and David in the hospital because he was "physically violent." Samantha also reported that Walter had been abusing his prescription medication for bipolar disorder, "drank a pint of whiskey each day, and . . . had been abusing [c]ocaine for ten years."

A-1895-17T1

Walter denied any incidents of domestic violence or substance abuse and agreed to submit to random urine screens with the Division. In December 2015, Walter tested positive for amphetamines.[2] Walter missed four scheduled substance abuse evaluations without providing a reason. In January 2016, Walter submitted to a substance abuse evaluation and was recommended for outpatient substance abuse treatment for "mild alcohol use disorder." The following month, Walter's urine tested positive for amphetamines. Walter did not comply with recommended outpatient substance abuse treatment.

In May 2016, when David was five months old, the Division received a referral from the Englewood Police Department because Samantha reported that while she was at Walter's home with David, Walter was "up all night drinking whiskey and wine." She told police that Walter "jumped on top of her, pinned and held her down," and then "shoved her against the wall, dragged her into the hallway, and spit in her face." David was sleeping in the same room where the altercation took place. Samantha reported "she feared for her son as [Walter] was so intoxicated . . . ."

---

[2] Walter's counsel represented to the court that Walter had amphetamines in his system due to a valid prescription for Adderall. The court reports from January 23, 2017, March 10, 2017, and May 30, 2017 reflect that Walter was not again tested for amphetamines until he tested negative on June 15, 2017. The court reports state Walter consistently tested negative for cocaine.

A-1895-17T1

On June 1, 2016, the Division filed a complaint for care and supervision with restraints on Walter's parenting time with David due to concerns for domestic violence between his parents and substance abuse by Walter. At an order to show cause hearing, after a Division caseworker testified, the court granted the Division's application, continuing joint legal custody between the parents and physical custody with Samantha. The court order provided that (1) Walter was restrained from unsupervised contact with David and from Samantha's home, (2) the Division was to supervise Walter's visits with David for two hours, twice a week at the Division's local office, (3) Samantha was restrained from attending Walter's visits with David, (4) Samantha and Walter were to attend psychological evaluations and domestic violence counseling, and (5) Walter participate in outpatient substance abuse treatment.

In July 2016, the court modified the restraints to allow supervision of Walter's visits by an approved supervisor in a community setting. The judge expressed approval of Walter's participation in a substance abuse program. The following month, the court granted Walter unsupervised parenting time on a liberal basis.

At a January 2017 hearing, Samantha requested that Walter's parenting time be supervised again because he was not complying with substance abuse

treatment despite a caseworker's offer to provide transportation. The caseworker reported Walter had called her at times and "sounded pretty intoxicated." Samantha also reported that Walter's attendance at co-parenting therapy was "very inconsistent." The co-parenting therapy provider recommended individual therapy because Walter "demonstrated that he's not ready for co-parenting."

On February 17, 2017, the court held an emergent hearing after the results from a blood spot[3] received the day of the hearing were positive for alcohol. Also, the police observed Walter under the influence when he was more than an hour late to pick up David on February 6, 2017. The urine test from the following day was positive for alcohol. Walter refused a random alcohol screen on the morning of the hearing. The court issued an order providing for weekly parenting time supervised by the Division, two hours per visit, twice per week. The order provided that "[Walter's] visits may revert to unsupervised [on] a self-executing basis upon receipt of positive collaterals from [his] treating therapist."

---

[3] Testing was performed by the United States Drug Testing Laboratories, Inc. A blood spot test uses a sample of blood from a finger prick, and is a less invasive method of testing blood for alcohol than other alternatives, such as needle and vial collection. Adult & Child Drug Testing Services, United States Drug Testing Laboratories, Inc. 7 (last visited January 28, 2019), https://issuu.com/usdtl/docs/forensic_catalog_2016?e=16760800/33882592.

Four months later, Walter complied with a hair follicle test[4] that was positive for alcohol.

On September 14, 2017, the Division requested dismissal of the matter. The Law Guardian reported that David was doing well in Samantha's care. Walter had completed an outpatient substance abuse program, but missed two blood spot tests due to employment obligations. Walter sought dismissal of the case without parenting time restraints. Regarding a blood spot test taken that morning, Walter's counsel said to the court: "[w]hatever it does come up as . . . I want to make sure everyone's on notice that we -- we may seek to -- to ask for a hearing regarding [dismissal with restraints]." Counsel continued: "my client [understands] what Your Honor's order is and, more importantly, that it may be conditioned upon . . . the results of the . . . blood spot test. We are asking that if the blood spot test comes back negative that he be permitted to have unsupervised contact with his child."[5] The court issued an order which provided that the Division's recommendation for dismissal was reserved and Walter's

---

[4] A hair follicle test may detect drugs and alcohol for a period of up to ninety days prior to testing. See id. at 4-5, 8-9.

[5] Samantha reported Walter had shown her "two different body cleanses, one a liquid form and another a pill form, that he takes before providing screens." Thus, Walter may have believed he could drink alcohol and still test negative.

parenting time would be unsupervised upon receipt of a negative blood spot test. The court made clear that "we will be on the course for a dismissal next time."

Walter's September 14, 2017 blood test was positive for alcohol. On November 16, 2017, the court held a final compliance review hearing. Walter objected to dismissal with restraints on parenting time, noting that it was unclear whether the test results indicated that Walter had a drinking problem, or that he drank socially while he was not caring for David. Walter sought an additional hearing:

> [WALTER'S COUNSEL]: I would just ask for some -- another hearing, because I don't think it's fair that my client is being restricted with his child without something more. I think the Division just gave up. They don't want this case anymore.
>
> THE COURT: Oh, I don't think that the Division gave up at all . . . . I think the Division has given [Walter] more than ample opportunity to rectify this situation. Alcohol has been a concern since the beginning. I was going to dismiss this case last time. I did not. I wanted the blood spot and guess what? It's positive for alcohol. He is not taking his recovery seriously at all -- or his drinking seriously at all and he poses a risk to his son. Regardless of whether it's an illegal substance or it's not an illegal substance, alcohol is a very serious substance and he's not, in my opinion safe to be unsupervised with his child.
>
> [WALTER'S COUNSEL]: Judge, but we --

A-1895-17T1

> THE COURT: And I've given him the opportunity and this case has been open for a very long time and he still hasn't rectified the situation. He's gone to a program and he did successfully complete it and now he's right back where he started from. So we're not going to keep this case open infinitely. I'm dismissing the case today.

The court terminated litigation, finding "no risk or safety issues for the minor in the custody of the mother." The court order continued legal custody of David with both parents and physical custody with Samantha. Walter was provided parenting time Saturday and Sunday supervised by the maternal or paternal grandmother from 1:00 to 5:00 p.m. The order required Walter to complete substance abuse treatment with negative screens prior to an application for a change in parenting time. The order denied Walter's application for a dispositional hearing "for the reasons set forth on the record."

Our review of family court decisions is limited. Hand v. Hand, 391 N.J. Super. 102, 111 (App. Div. 2007). "Because of their special expertise in family matters," a reviewing court accords deference to family court fact-finding. Ibid. (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)).

While "a court must ensure that the statutory and constitutional rights of the parent or guardian are scrupulously protected," these rights must be balanced against the State's responsibility to protect the welfare of children. N.J. Div. of Youth & Family Services v. G.M., 198 N.J. 382, 397 (2009).

Walter argues on appeal that the court violated his due process rights when it dismissed the case with restraints on parenting time and imposed conditions on lifting the restraints without holding an evidentiary hearing as to whether the restraints were in David's best interests. In response, the Division argues that Title 30 actions, unlike those brought under Title 9, do not require dispositional hearings. Compare N.J.S.A. 30:4C-12, with N.J.S.A. 9:6-8.21(c). It is the Division's position that "the trial court appropriately exercised its discretion and relied on its long history with the case to properly conclude that no genuine issue of fact warranted an evidentiary hearing at the time of dismissal from litigation on November 16, 2017." The Law Guardian supports the Division's position, citing "unrefuted evidence of [Walter's] continued substance abuse."

Under Title 30, the Division may investigate a complaint alleging that the parents are "unfit to be entrusted with the care" of a child, "fail to ensure the health and safety of the child, or [are] endangering the welfare of such child." N.J.S.A. 30:4C-12.

"[T]he Legislature intended N.J.S.A. 30:4C-12 to authorize the Division to intervene when children need services and a parent cannot provide that help for no fault-based reason." N.J. Div. of Youth & Family Servs. v. I.S., 214 N.J. 8, 15 (2013). "Title 30 does not discuss dispositional hearings, as delineated in

Title 9." N.J. Div. of Youth & Family Servs. v. J.D. (In re J.B.), 417 N.J. Super. 1, 23 (App. Div. 2010); N.J.S.A. 30:4C-12. "[T]he court's determination is based on the best-interests-of-the-child standard . . . ." N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 33 (2013). "Absent a showing that services or [Division] supervision or both appear to be in the best interests of the child because the services are needed to ensure the child's health and safety, a case should be dismissed." N.J. Div. of Youth & Family Servs. v. T.S., 426 N.J. Super. 54, 66 (App. Div. 2012). While "best interests" is not defined within the statute, it has been interpreted to mean "protection of children from harm when the parents have failed or it is 'reasonably feared' that they will." T.S., 426 N.J. Super. at 65 (quoting N.J. Div. of Youth & Family Servs. v. Wunnenburg, 167 N.J. Super. 578, 586 (App. Div. 1979)). "Parents do not have the right to extend litigation indefinitely until they are able to safely care for their children . . . ." N.J. Div. of Child Prot. & Permanency v. S.D., 453 N.J. Super. 511, 524 (App. Div. 2018).

After seventeen months of litigation, the trial court made a finding that David was safe in the physical custody of his mother with supervised parenting time with his father. Rather than argue that he was ready for unsupervised visitation, Walter requested more time to engage in services. Similar to the

parent in S.D., Walter demonstrated that he is unable to correct the circumstances leading to the restraints on parenting time by continuing to test positive for alcohol in the face of a court order that conditioned unsupervised parenting time on a negative alcohol screening, and thus dismissal of the litigation with supervised visitation was appropriate. See ibid. Walter retains the opportunity to apply for modification of parenting time when he completes substance abuse treatment.

Walter relies on G.M., 198 N.J. at 402, where the Court addressed an action brought pursuant to Title 9, and remanded the case for a dispositional hearing, at which "both sides may present material and relevant evidence," as required by the dispositional hearing clause in the statute. Here, the Division withdrew its Title 9 complaint, and pursued the action under Title 30, which does not have a dispositional hearing requirement. N.J.S.A. 30:4C-12. I.S., 214 N.J. at 15-16, is also distinguishable because that case was brought under both Title 9 and Title 30, and the children were removed from their mother's custody. There, the Court found the Title 9 action should have been dismissed because there was no finding of abuse or neglect. Id. at 31. Nonetheless, it noted approval of the trial court's custody hearing, applying the best-interests test before a transfer of custody. Id. at 40-41. Here, however, this case was not

brought under Title 9 and does not involve a transfer of custody. Walter maintained joint legal custody of David, and Samantha retained physical custody. See also Wilke v. Culp, 196 N.J. Super. 487, 503 (App. Div. 1984) (remanding for a plenary hearing where the parent was denied parenting time entirely).

Walter, who was represented by counsel, conceded that his abstention from alcohol was required for him to exercise unsupervised parenting time with his infant child. He agreed to take alcohol tests, which subsequently tested positive. He offered to condition lifting restraints on the results of his September 14, 2017 test, which also tested positive. The record is replete with evidence of his unhealthy alcohol involvement. In this factual situation, we do not find a plenary hearing was necessary. The other issues raised by Walter on appeal are without sufficient merit to warrant discussion in an opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION