# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5693-17T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

A.B.,

     Defendant-Appellant,

and

T.P.,

     Defendant,

_____

IN THE MATTER OF T.B.,

     a Minor.

_____

Submitted February 24, 2020 – Decided April 7, 2020

Before Judges Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FN-02-0152-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Carol L. Widemon, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Jill N. Stephens-Flores, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Nancy P. Fratz, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

The Division of Child Protection and Permanency filed a verified complaint in December 2015, under N.J.S.A. 9:6-8.21 alleging abuse and neglect, and N.J.S.A. 30:4C-12 alleging a need for services and seeking care and custody of T.B. ("Troy")[1] (born December 24, 2014) and his sister,[2] the children of defendant A.B. ("Aaron") and T.B. ("Tiffany"). The trial court determined

---

[1] We utilize the initials and pseudonyms used in A.B.'s merits brief to protect the privacy of the children and parties and to preserve the confidentiality of the proceedings. R. 1:38-3(d)(12).

[2] Troy's sister has been placed in the physical and legal custody of her maternal grandmother and is not a part of this appeal.

A-5693-17T3

the children were exposed to instances of domestic violence, their parents' drug use and Tiffany's untreated mental health issues, and entered an order declaring both children to be wards of the court and placing them in the Division's care and supervision. The order, in pertinent part, also compelled Aaron to: comply with a Division-arranged substance abuse evaluation and any recommended treatment; submit to random urine screens; comply with Division-arranged hair/nail-drug testing and, on the return date, a Division-arranged psychological evaluation and any resultant recommendations. The order also restrained any unsupervised contact with the children but approved supervised contact.

In March 2016, after the Division requested the court to dismiss its Title 9 claim because, after investigation, its abuse/neglect allegations were "not established," Aaron's counsel informed the court that she had reviewed the Division's investigation summary with Aaron, and that he consented to the court's jurisdiction and further proceedings under Title 30, having already commenced attendance at Alternatives to Domestic Violence (ADV), scheduled a psychological evaluation, and attended a hair/nail-drug test at which he claimed "[n]o one was there[.]"

After compliance reviews in June, September and December 2016, June, September and December 2017, and March 2018, as well as a March 2017

3

hearing, in June 2018, the trial court terminated the Title 30 litigation because Troy was returned to Tiffany's physical custody. The order provided:

> [Aaron] is restrained from any unsupervised contact with the minor [Troy]
>
> [Aaron is] to apply to the Family Court room 163 under an FD docket for supervised visitation through Bergen Family Guidance.
>
> Prior to any application for change in custody or visitation, [Aaron is] to provide proof of negative screens, negative hair/nail[-drug] test and compliance with [intensive outpatient] level of substance abuse treatment.

Aaron appeals from the June 2018 order, arguing:

> POINT ONE:
>
> THE JUNE 21, 2018 ORDER TERMINATING LITIGATION SHOULD BE VACATED AND THE MATTER SHOULD BE REMANDED FOR A PLENARY HEARING BECAUSE AARON'S TRIAL COUNSEL'S REPRESENTATION WAS INEFFECTIVE IN FAILING TO OBJECT TO THE ORDER, WHICH IMPOSED RESTRAINTS TANTAMOUNT TO TERMINATING AARON'S PARENTAL RIGHTS WITHOUT A HEARING OR TESTIMONY AND WHICH WAS BASED SOLELY ON HEARSAY DOCUMENTS AND THE REPRESENTATIONS OF THE STATE'S LAWYER.
>
> POINT TWO:
>
> EVEN IF THIS COURT FINDS THAT THE VISITATION RESTRAINTS OF THE ORDER

4

> TERMINATING LITIGATION DID NOT EXTINGUISH AARON'S PARENTAL RIGHTS, THE ORDER SHOULD BE VACATED AND THIS MATTER SHOULD [BE] REMANDED FOR A PLENARY HEARING BECAUSE THE ORDER'S PROVISIONS EFFECTIVELY DENIED AARON VISITATION WITH HIS CHILD WITHOUT A PROPER LEGAL BASIS.

We find no merit in these arguments and affirm.

Turning first to his second point, the order terminating litigation did not "effectively terminate Aaron's parental rights." In fact, the court continued legal custody of Troy with both Aaron and Tiffany. It further provided Aaron with supervised visitation with Troy; it restrained only unsupervised contact. The conditions on visitation were imposed as a proper exercise of the trial court's authority under N.J.S.A. 30:4C-12, after the trial court previously found Aaron was in need of services required in Troy's best interests. See N.J.S.A. 30:4C-12; N.J. Div. of Youth & Family Servs. v. I.S., 214 N.J. 8, 35 (2013). Again, these are the conditions to which, in March 2016, Aaron originally consented, and with which he represented he had already begun compliance. Three months later he advised that his prior employment prevented him from attending services, although he also reported he was fired from that employment because he missed work to attend services. He also advised that his new employment was not sufficiently flexible to allow him to comply with random urine

screenings and domestic violence classes. He was discharged from ADV due to non-payment. He proposed, and the Division acquiesced, to his obtaining and paying for urine screens from a private facility if he was unable to submit to a screening at the Division offices during business hours; and to obtaining domestic violence therapy through a provider covered by his employer's health plan.

As the Court noted in I.S., even absent a finding of abuse or neglect, through N.J.S.A. 30:4C-12 the Legislature authorized services to children in need because of parental unfitness or inability to provide a safe and healthy environment until those services are "no longer necessary." 214 N.J. at 36. In such cases, parental rights are not terminated; rather, the child is temporarily placed under the care and supervision of the Division if "the best interests of the child so require. . . ." N.J. Div. of Youth & Family Servs. v. T.S., 426 N.J. Super. 54, 65 (App. Div. 2012) (alteration in original) (quoting N.J.S.A. 30:4C-12). "The term 'best interests' is not statutorily defined," ibid. (citing N.J.S.A. 30:4C-10 and N.J.S.A. 30:4C-12), but courts have traditionally interpreted it to mean "protection of children from harm when the parents have failed or it is 'reasonably feared' that they will," ibid. (quoting N.J. Div. of Youth & Family Servs. v. Wunnenburg, 167 N.J. Super. 578, 586-87 (App. Div. 1979)). Setting

aside Aaron's consent to services, the record still amply supports the trial court's determination that Troy's best interests required Aaron to obtain services.

At a September 2016 compliance review hearing, Aaron was present when his counsel informed the trial court that Aaron had been unable to comply with the previously ordered urine screens; and that "[i]n reference to the domestic violence classes," Aaron was "looking for employment and that [it] might be a hindrance [for] him [to] submit[] to ADV." The court's order noted "there remain concerns regarding substance abuse issues [and] domestic violence issues for which the parents have not been complying with services"; as such, "services are required in the best [interest] of [Troy,]" under N.J.S.A. 30:4C-12.

In December 2016, Aaron had still not attended a substance abuse evaluation that was then scheduled for four days after that hearing. And, notwithstanding his counsel's request that the court refrain from drawing a negative inference from Aaron's failure to attend multiple drug screens because he was in an accident, the court found Aaron

> failed to go to the pysch[ological] eval[uation], failed to submit to screens, [has] not [been] visiting [Troy], and has yet to engage in ADV.
>
> So to [the court], there has not been any attempt to comply with any of [its] orders. So this is not the end-all, sir. There's still time. Times a ticking. And

A-5693-17T3

> [the court] need[s] for [Aaron] to start doing what [he]
> need[s] to do. Okay?

The trial court drew the negative inference because Aaron failed to submit to drug screens on September 22, September 27, October 11, October 17 and November 21, 2016.

Following a March 2, 2017 testimonial hearing, both parents' noncompliance resulted in the trial court's order placing Troy in the Division's custody and care. Aaron was ordered to submit to a psychological evaluation and comply with all recommendations; comply with prior non-conflicting orders of the trial court; submit to a substance abuse evaluation and comply with resultant recommendations; comply with random urine screenings and Division-arranged hair/nail-drug tests; engage in domestic violence therapy at ADV; and engage in individual therapy and comply with related recommendations. In reaching its conclusion, the trial court noted Aaron: tested positive for cocaine and marijuana after a hair-drug test in March 2016; tested positive for marijuana in March and December 2016 when he submitted to urine screens; and, in January 2017, picked up Troy from daycare while unsupervised.

After Aaron began attending ADV in April 2017, he was granted unsupervised visitation with Troy that June; though, it would revert to supervised visitation if he tested positive for illegal substances or otherwise

8

failed to comply with court-ordered services. About three months later, at a compliance review hearing that Aaron failed to attend, the trial court was advised that Aaron failed to attend a drug screening, failed to complete an extended substance abuse assessment, and did not comply with requested urine screens. The court found that Troy required continued care and supervision, and entered an order: continuing custody of Troy with the Division; supervised visitation for Tiffany; reimposing supervised visitation for Aaron; restraining Aaron from visiting the residence where Tiffany lived; and allowing Aaron to have unsupervised visitation if he complied with substance abuse evaluations and produced negative urine screens.

Aaron appeared at the December 2017 compliance review hearing. He had not submitted to a substance abuse evaluation. Although Aaron and Tiffany were awarded joint legal custody of Troy, Aaron's supervised visitation with Troy continued.

Aaron did not attend the March 2018 compliance review and summary hearing at which the trial court found Aaron's hair-drug test was positive for THC, he "failed to attend several substance abuse evaluations," and "failed to comply with ADV counseling as well as individual counseling." The court determined Aaron was then "unable to adequately care for [Troy]," and that

"[t]herapeutic services continue[d] to be necessary [in] the best interest[s] of the minor child." The court, therefore, continued the Division's care and supervision. The Division forewarned that it "may be looking towards a dismissal" of the case with Aaron's "contact supervised into the future," in view of Tiffany's negative drug screens and Aaron's continued failure to "do anything."

The Division did just that at the June 2018 hearing at which Aaron failed to appear. He had not visited Troy in nine months. After awarding Tiffany physical custody of Troy, the trial court entered the order terminating litigation with the continued conditions on Aaron's contact and visitation with Troy.

The record thus supports the trial court's imposition of the services with which Aaron was to comply in Troy's best interests. Aaron's acts of domestic violence, and his drug use borne out by numerous drug screens and drawn negative inferences from his failure to submit to screenings, necessitated the services. Extending special deference to the Family Part's expertise, N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-43 (2010); Cesare v. Cesare, 154 N.J. 394, 413 (1998), we decline to "second-guess or substitute our judgment for that of the family court," in that "the record contains substantial

and credible evidence to support the decision[,]" <u>N.J. Div. of Youth & Family Servs. v. F.M.</u>, 211 N.J. 420, 448-49 (2012).

Unlike the inapposite cases upon which Aaron relies, the trial court did not permanently deny Aaron visitation rights with Troy or base its decision on undeveloped facts. The trial court's decision to restrict only unsupervised contact was based on the ample record of Aaron's failure to protect Troy's best interests as demonstrated by his noncompliance with court-ordered services from the inception of the litigation through June 2018. The litigation was terminated, not on the basis of anything that was revealed at the June 2018 hearing regarding his noncompliance; it was based on Tiffany's successful reunification with Troy and Aaron's months of failing to avail himself of the services offered to him. There was more than enough evidence to prove by a preponderance of the evidence that it was in Troy's best interests to initially require services, and that, after reunification with Tiffany, those services were no longer required for Troy's best interests. <u>See</u> <u>I.S.</u>, 214 N.J. at 38.

The Division's supervision under N.J.S.A. 30:4C-12 is not intended to be ongoing. It offers "temporary relief." <u>I.S.</u>, 214 N.J. at 37. Thus, we see no error in the court's termination of the Title 30 litigation. As the law guardian represented to the trial court during that last hearing, Troy was "well cared for"

by Tiffany, and he was "doing very well in her care." As such, she had no objection to the dismissal. Likewise, Tiffany had no objection and was "actually very excited to have this case dismissed." Aaron had been unresponsive "despite [his counsel's] best efforts." There was no need to require services for Troy's best interests.

The avenue left open to Aaron by the trial court was suited to the "unique familial circumstance" in this case, considering the trial court's best-interests determination. See id. at 38. Aaron was not utilizing the Division's resources. In fact, at one point he requested the option to use private urine screenings and a private domestic violence therapy provider. If Aaron is in need of services, he can consent to same under N.J.S.A. 30:4C-11.

The trial court left the ball where it was: in Aaron's court. He need only provide negative drug tests and compliance with substance abuse treatment before applying for unsupervised visitation. And, inasmuch as he could not be contacted prior to or at the final hearing to arrange for supervised visits, he is required to apply under the FD docket so Bergen Family Center could be contacted to schedule those visits. There is no need to combine that application with an FN docket.

Claims for ineffective assistance of counsel in Title 30 proceedings should be analyzed under the two-prong test first articulated by the U.S. Supreme Court in Strickland v. Washington 466 U.S. 668, 687 (1984) and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 307 (2007).[3]

We determine Aaron's ineffective assistance of counsel arguments are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E). We add only that counsel was not ineffective for failing to object to the entry of the final order without a hearing. As we have explained, the order was properly entered. "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." State v. Worlock, 117 N.J. 596, 625 (1990).

Under the Strickland-Fritz test, also without merit are Aaron's remaining arguments that his trial counsel was ineffective for: failing to "pose any objection to [the] entry into evidence of the court report and hearsay

---

[3] The test requires a party to first show that counsel was deficient or made errors so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment of the United States Constitution. Strickland, 466 U.S. at 687. To meet the second prong, the party must also demonstrate that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

 A-5693-17T3

attachments" during the June 21, 2018 hearing; and failing to proffer a psychological evaluation, a progress letter from Aaron's counselor, and two evaluations/letters during the hearing. The record is insufficient to determine whether the court report and attachments were inadmissible hearsay to which counsel should have objected, or if they were admissible as business records under N.J.R.E. 803(c)(6), if they met "the standards of N.J.S.A. 9:6-8.46(a)(3), Rule 5:12-4(d), or [In re Guardianship of Cope, 106 N.J. Super. 336, 343 (App. Div. 1969).]" N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 496 (App. Div. 2016).

Even if they were inadmissible, Aaron cannot meet the second Strickland-Fritz prong. The hearsay statements complained of—documenting Aaron's continued failure to comply with court-ordered services—were simply part of the plethora of such evidence adduced over the many months of hearings at which the trial court heard and saw proof of Aaron's noncompliance. That same evidence belied the evidence Aaron claims his counsel failed to proffer: the psychological evaluation that there was "no evidence of [Aaron's] significant parenting deficits" and the progress letter stating Aaron "understands what it takes to be a parent and that he could be an appropriate father to his son." There

14

is no reasonable probability that the averred admitted hearsay and both unoffered reports would have changed the outcome of this case.

Aaron's transgressions, including his failure to remain drug-free, attend a substance abuse evaluation and follow recommended treatment, complete ADV therapy, comply with drug testing, or even attend two of the last four court hearings squarely place the trial court's dismissal order at Aaron's feet. Even if counsel was ineffective—a conclusion we do not reach—Aaron cannot show that the order would not have been entered if the hearsay objection was made and the two documents were proffered.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5693-17T3