# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0272-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

C.N.,

     Defendant-Appellant,

and

L.C., A.H., D.L., and J.R.,

     Defendants.

_____

IN THE MATTER OF CH.N., AL.H.,
G.N., and JU.R.,

     Minors.

_____

Argued January 14, 2020 – Decided March 4, 2020

Before Judges Hoffman, Currier and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cape May County, Docket No. FN-05-0005-17.

David Anthony Gies, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; David Anthony Gies, on the briefs).

Tara K. Catanese, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Tara K. Catanese, on the brief).

Melissa R. Vance, Assistant Deputy Public Defender, argued the cause for minor CH.N. (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Melissa R. Vance, of counsel and on the brief).

PER CURIAM

Defendant C.N. (Cheryl)[1] appeals from an October 4, 2017 order denying visitation with her oldest daughter CH.N. (Cathy) and terminating Cathy from the litigation. Cheryl contends that the Family Part judge erred because she only relied on Cathy's preference not to see her mother and did not give the parties an opportunity to present expert evidence as to whether Cathy would benefit from additional services. After a review of the contentions in light of the record and applicable principles of law, we affirm.

---

[1] We use initials and pseudonyms to protect the parties' confidentiality and for the ease of the reader. R. 1:38-3(f)(2).

A-0272-18T4

During the summer of 2016, the New Jersey Division of Child Protection and Permanency (the Division) received several referrals regarding Cheryl, her neglect of the children living with her and the uncleanliness of the home. In July 2016, the Division filed a verified complaint and Order to Show Cause (OTSC) for the care and supervision of Cheryl's four children: Cathy, born in December 2004; AL.H., born in March 2007; G.N., born in May 2009; and JU.R., born in October 2012. Each child has a different father.

Cheryl's history with the Division dated back to 2007. At that time, Cheryl alleged Cathy's father, Louis, had sexually abused Cathy. While the Division initially had custody, care, and supervision of Cathy, custody was transferred to Louis later that year. Cheryl had supervised visits. In 2009, the litigation was terminated under a mediated consent order. Louis was the primary residential parent. Cheryl and Louis also litigated custody and visitation issues under an FD docket.

Cathy was still living with Louis at the time of the OTSC hearing in 2016. Cheryl had parenting time every other weekend.

In the months before the 2016 Division filing, a physician treating Cathy's sister became concerned that Cheryl suffered from factitious disorder imposed

3 <span style="float:right">A-0272-18T4</span>

on another (FDIA), previously known as Munchausen syndrome by proxy.[2] Another physician reported during a Division investigation that Cheryl suffered from delusional parasitosis.[3] As a result, Cheryl was referred for a psychological evaluation. The May 2016 evaluation recommended Cheryl comply with supportive therapy and undergo a psychiatric evaluation.

On the return date of the OTSC in August 2016, Cheryl advised the court she had recently voluntarily admitted herself into an inpatient psychiatric treatment facility because she was having homicidal thoughts. She had completed the program and agreed to cooperate with the services requested by the Division. Cathy continued to live with Louis.

Cathy was attending counseling at Jewish Family Services (JFS) and did not want any in-person or telephone contact with Cheryl until her mother was

---

[2] FDIA occurs "when someone falsely claims that another person has physical or psychological signs or symptoms of illness, or causes injury or disease in another person with the intention of deceiving others." Factitious Disorder, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/factitious-disorder/symptoms-causes/syc-20356028 (last visited Feb. 18, 2020).

[3] "People with delusional parasitosis have an unshakable, false belief that they are infested with insects, worms, mites, lice, fleas, or other organisms." James G. H. Dinulos, Delusional Parasitosis, The Consumer Version of the Merck Manuals, https://www.merckmanuals.com/home/skin-disorders/parasitic-skin-infections/delusional-parasitosis (last modified Sept. 2018).

A-0272-18T4

well. Cathy also stated her mother forced her to write a letter to the Division several months earlier in which Cathy said she was afraid of her father and he had inappropriately touched her. The court did not grant Cheryl visitation with Cathy.

In December 2016, Cathy requested to be terminated from the litigation. The court denied her request and ordered her to continue counseling with JFS. Although the court also ordered the Division to refer Cheryl and Cathy for therapeutic visitation, the Division was permitted to elicit input from Cathy's therapist on this issue.

During this hearing, the court also considered Cheryl's psychiatric evaluation performed in October 2016. During the evaluation, Cheryl admitted she was hospitalized for five days in August 2016 for "homicidal ideation." She denied "any current suicidal ideations/attempts and homicidal ideations/attempts," and reported she was receiving mental health treatment. Cheryl recounted a past and current history of taking psychopharmacological medications. She also admitted to a recent use of marijuana but denied using any other illegal substances. Cheryl reported attending outpatient substance abuse treatment.

A-0272-18T4

The psychiatrist diagnosed Cheryl with unspecified anxiety and depression disorders, as well as post-traumatic stress disorder. It was recommended that Cheryl undergo individual therapy, co-parenting training classes, follow-up medical care, attend a substance abuse relapse prevention program, domestic violence support group and group therapy and be prescribed psychotropic medication.

Cathy's request for an interview with the court was granted. During the January 2017 interview, Cathy told the court she was twelve years old, in the sixth grade and was a straight A student. She wanted to continue living with her father and did not want to see her mother at that time. Cathy said her mother was "crazy." She described incidents where Cheryl had contacted one of Cathy's friends asking the friend to tell Cathy she wanted to visit her and that Louis was a bad person. Cheryl also told Cathy that Louis had abused her.

On many occasions when Cathy had visited her mother, Cheryl would not be home. Cathy described one visit when Cheryl got drunk with friends and left the house in the middle of the night. She also said her mother smoked in the shed. She said it was not cigarettes. Cathy was told to watch the six little kids in the house. The house was filthy and there was nothing to eat. Cathy did not want any communication with her mother.

A-0272-18T4

In a February 2017 order, the court declined to order any therapeutic visits between Cheryl and Cathy. The decision was based on Cathy's unwillingness to engage in visitation and the lack of evidence that visitation was in her best interest.

The parties appeared before a different judge in March 2017. Cathy reported she had completed therapy at JFS and again requested she be terminated from the litigation. Cheryl opposed the request. Cheryl also refused to submit to a drug screen.

When Cheryl requested permission to attend Cathy's spelling bee, Louis and Cathy objected, advising the court that Cheryl could view it remotely. Louis and Cathy also requested there not be any visits between Cheryl and Cathy, and Louis requested he also be dismissed from the litigation. The court denied Cheryl's request regarding the spelling bee, ordered sibling visits, denied the request to dismiss Cathy and Louis from the litigation, and declined to order therapeutic visitation between Cathy and Cheryl. The court also ordered JFS to provide a discharge summary report.

In April 2017, the court[4] reviewed the report from JFS. The therapist indicated that Cathy attended eighteen bi-weekly sessions between June 14,

_____

[4] A third judge presided over this hearing.

A-0272-18T4

2016 and December 12, 2016. Cathy had undergone trauma-focused cognitive behavioral therapy where she described her "trauma" as "neglect and possible substance abuse by parent." During her initial evaluation, Cathy had appeared "anxious and guarded." She reported "symptoms of trouble sleeping, becoming easily upset, and difficulty trusting people." Cathy also expressed concern over the safety of her siblings during her visits, due to Cheryl's frequent absence from the home.

The therapist noted Cathy had improved with treatment, specifically in the areas of coping skills, increased socialization, ability to share thoughts and feelings with family members, better sleep, less agitation, and an ability to verbalize thoughts and feelings related to her trauma. However, she still expressed concern for her siblings and was unwilling to visit with her mother. Therapy was noted as an option for the future.

During a hearing in June 2017, Cathy again requested a dismissal from the litigation. She advised the court that Cheryl had attended Cathy's sixth grade graduation without securing permission beforehand. Despite the no contact provision, Cheryl had chased after Cathy several times and yelled at her loudly during the ceremony. The court ordered Cheryl to undergo additional therapy because of mental health concerns.

 A-0272-18T4

In October 2017, a fourth judge presided over the case and interviewed Cathy, who renewed her request to terminate the litigation. Cathy described several incidents regarding Cheryl. On one occasion, Cheryl's house had no running water. Because Louis is a plumber, Cheryl claimed he broke into the house and turned off the water. Cathy said Cheryl frequently lied – telling Cathy she was going to the store, and not returning for several hours. Although Cathy said she missed her mother, she was adamant she did not want to see her.

In renewing her request to terminate the litigation, Cathy, through the Law Guardian, reminded the court that the dispute over custody and visitation had lasted more than ten years. Because Cathy had concluded her therapy, she asserted there was no need to remain in the litigation as she was not receiving any services.

The Division and Louis supported Cathy's wish to terminate the litigation; Cheryl did not. Louis testified that Cathy "just wants to be a kid," and although she loved her mother, she needed time to heal. Louis also stated he had observed improvements with Cathy following therapy.

The court advised that its initial inclination was to facilitate visitation in the presence of a third party. However, after listening to Cathy and Louis and

9

reviewing the JFS report, the court concluded that forcing Cathy to visit her mother would cause her more harm.

In arriving at its determination, the court found Louis's testimony "very credible," and noted he had primary legal and physical custody of Cathy set in an FD order prior to the Title 30 litigation. The court also observed that Cathy was extremely stressed when discussing Cheryl. Finally, the court relied on the report from JFS, noting Cathy had reached her goals, she was not ready to see her mother, but if she chose to continue her relationship with her mother, "therapy was always an option to revisit in the future."

The October 4, 2017 order terminated Cathy and Louis from the litigation and prohibited Cheryl from any contact with Cathy pending further order of the court. Cheryl was apprised she could make an application for visitation under the FD docket, on notice to the Division and Law Guardian. Sibling visits were continued.[5]

On appeal, Cheryl argues the court erred in solely relying on Cathy's preference in its decision to terminate Cathy from the litigation.

---

[5] The FN litigation as to the other three children was terminated without objection in August 2018.

 A-0272-18T4

Our review of a Family court's decision is limited.  In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002).  "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence."  Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).  Particular deference should be given to a trial judge's credibility determinations and to "the family courts' special jurisdiction and expertise . . . ."  Id. at 413.  Unless the trial judge's factual findings are "so wide of the mark that a mistake must have been made," they should not be disturbed, even if the reviewing court would not have made the same decision.  N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)).

Here, after investigating a referral regarding Cheryl's care of her children, the Division filed an application for the care and supervision of the children and for other necessary relief.  At the time and for the prior nine years, Cathy lived with her father, who had legal and physical custody of her under an FD order.  After a summary hearing, the court issued an order for the relief requested as it was satisfied that the Division's care and supervision was in the "best interests"

11

of all the children. N.J. Dep't of Children & Families v. I.S., 214 N.J. 8, 35 (2013) (quoting N.J.S.A. 30:4C-12).

Although a child protection order is limited to a period of six months from the date of entry, the court may extend the time if it determines that continued care and supervision is still in the best interests of the child. N.J.S.A. 30:4C-12; I.S., 214 N.J. at 37-38. The litigation should be dismissed only when the Division's services or supervision, or both, are not needed to facilitate the best interests of the child. N.J. Div. of Youth & Family Servs. v. T.S., 426 N.J. Super. 54, 66 (App. Div. 2012). Relief granted under N.J.S.A. 30:4C-12 "can, and will, vary in each unique familial circumstance because best-interests-of-a-child determinations are extremely fact-sensitive and require tailored relief based on those circumstances." I.S., 214 N.J. at 38.

The "best interests" analysis requires the court to consider a number of factors, including the safety of the child, the fitness of the parents, and the child's preferences. N.J.S.A. 9:2-4(c). While a child's preferences must be considered by the court, they are not the controlling factor in determining whether a parent's constitutional right to visitation should be denied. Wilke v. Culp, 196 N.J. Super. 487, 498 (App. Div. 1984).

When the court terminated Cathy from the litigation, the case was over fifteen months old. In addition, Cathy had been subjected to her parents' ten-year custody and visitation battle. This included Cheryl's repeated unsubstantiated allegations that Louis had sexually abused Cathy. As a result of the allegations, Cathy had completed eighteen sessions of therapy. JFS noted Cathy's improvement and that she did not wish to see her mother. The therapist advised that Cathy was not ready for contact with Cheryl.

Cathy told several judges she wanted to stop the compelled visits and explained her reasons why. The fourth judge described her "disturbing" observation of Cathy's extreme stress when she talked about her mother. She also noted Louis's testimony regarding the changes he had seen in Cathy since her therapy sessions but also explained that she needed to be a normal kid. Louis was confident that when Cathy chose to resume a relationship with her mother, she would do so. And, he stated he would wholly support his daughter when she made that decision.

The court supported its decision to terminate Cathy from the litigation with the testimony from Louis, in camera interviews of Cathy, Division records, the JFS report, and Cheryl's failure to complete her referred therapy services.

The court also noted that when the Division filed for care and supervision, Louis had physical custody of Cathy; Cheryl had visitation.

The court has not deprived Cheryl of a remedy to change the visitation determination. Under the termination order, Cheryl was instructed she could raise the visitation issue under the FD docket.

We are satisfied the court's determination to terminate Cathy from the Title 30 litigation was supported by its review of the evidence and its finding that continued visitation would harm Cathy and would, therefore, not be in her best interest. There was no evidence presented to controvert that finding.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION